**Gilberto GARIBAY, Appellant/Employee,**

v.

**THE TREASURER OF THE STATE OF MISSOURI AS THE CUSTODIAN OF THE SECOND INJURY FUND, Respondent.**

No. 72652.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 3, 1998.

Mogab & Hughes, P.C., Charles A. Mogab & Nancy R. Mogab, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, Vicky L. Anthony, Asst. Atty. Gen., St. Louis, for respondent.

KAROHL, Judge.

Claimant, for the third time, appeals an award of the Labor and Industrial Relations Commission (the Commission) denying benefits from the Second Injury Fund (the Fund). On January 16, 1989, claimant sustained an injury to his left shoulder. His claim against his employer was settled. An Administrative Law Judge (ALJ) heard his claim against the Fund which was based upon allegations of prior disabilities of "morbid obesity, sleep apnea and previous injuries to the 'left lower extremity' and 'right upper extremity.'" The ALJ found claimant was permanently and totally disabled and made an award against the Fund.

On July 22, 1994, the Commission, citing *Shipp v. National Vendors,* 862 S.W.2d 344 (Mo.App. E.D.1993), ruled claimant failed to prove his "preexisting problems" caused any difficulty which precluded him from performing his essential job functions. It decided claimant worked before the shoulder injury, full-time without interruption, so he was not entitled to recover from the Fund. We reversed and remanded to the Commission for reconsideration in accordance with a new standard set forth in section 287.220.1 RSMo 1994 because that statute, enacted in 1993, was a remedial statute and changed the standard for liability of the Fund. *Garibay v. Marcraft, Inc.,* 899 S.W.2d 553 (Mo.App. E.D.1995)(*Garibay I*).

On November 7, 1995, the Commission made a second final award denying compensation. It found, "although claimant has numerous preexisting injuries, none of them constituted an obstacle or hindrance to claimant's employment." We subsequently held the Commission failed to comply with our mandate following the first appeal. It "failed to apply the statutory standard in evaluating Garibay's preexisting *disabilities.*" *Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 60 (Mo.App. E.D.1996)(*Garibay II*). We reversed and remanded to the Commission for further proceedings "consistent with the opinion."

On May 29, 1997, the Commission entered a third final award denying compensation. It found claimant's sleep apnea was not a permanent condition; his morbid obesity was not a permanent condition, a prior fracture of his left wrist did not cause a permanent disability and did not hinder or obstruct employment or re-employment; a prior left ankle injury caused no permanent disability, hindrance or obstacle to employment or re-employment; a right elbow condition was not a disability; and, injuries of his left ankle and his knee which were treated surgically, were not a permanent disability. The Commission concluded the Fund was not liable because claimant had no preexisting permanent partial disabilities.

We review claimant's points on his third appeal. The Commission's factual find-

ings will be affirmed if they are supported by competent and substantial evidence and are not against the overwhelming weight of the evidence. *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. W.D.1995). If credibility of witnesses was an issue before the ALJ and the Commission, we would accept the Commission's decision. Section 287.495 RSMo 1994. However, credibility of all witnesses was not a disputed issue of fact. We will affirm the Commission's factual findings if they are supported by substantial and competent evidence and are not contrary to the overwhelming weight of the evidence. *Davis,* 903 S.W.2d at 571. Because this is a third appeal we also review, as a question of law, whether the Commission has rendered an award in conformity with its own previous findings which preceded the prior appeals and were the factual basis of previous opinions and mandates in this case. The Commission is without authority to modify, alter, amend or otherwise depart from the previous mandates. *Hankins v. Hankins,* 864 S.W.2d 351, 353 (Mo.App. W.D.1993).

The ALJ held one hearing only. All of the evidence was before the Commission prior to the original award. In the first award, the Commission expressly accepted "as true the testimony of the claimant." It observed that "[t]his claimant no doubt had numerous preexisting injuries, none of them were 'industrially disabling.'" It did not reject the claim on the basis that the preexisting conditions were not permanent. In our first opinion we referred to "claimant's prior medical conditions." *Garibay I,* 899 S.W.2d at 555. The Commission's second award included a finding that claimant "had numerous preexisting injuries." It found those injuries were not a hindrance or obstacle to employment and denied benefits. It did not find the injuries did not cause permanent disabilities. On appeal, we found "this commission failed to apply the statutory standard in evaluating Garibay's *preexisting disabilities.*" (Emphasis added). 930 S.W.2d at 60. We were required to reverse and remand because the Commission's award was based upon the former "industrial disability" evaluation which the legislature rejected and replaced. We reversed and remanded for proceedings consistent with our opinion and said, when re-

considering Garibay's preexisting disabilities in connection with the 1993 amendment, the Commission should be aware that not all portions of section 287.220.1 RSMo 1994, as amended, are to be applied retroactively, the provisions limiting the degree of disability that must be found in order for liability of the Fund to attach does affect a substantive right and, thereby, must be applied retrospectively. *Garibay II,* 930 S.W.2d at 60–61. We found that "each of the experts testifying about Garibay's *preexisting disabilities* concluded that given the presence of his sleep apnea, his employment in the open labor market would be severely and totally limited." (Emphasis added).

Claimant argues the Commission erred as a matter of law by: (1) deciding claimant's failure to have knowledge before the 1989 shoulder injury that he had a preexisting sleep apnea condition would exclude consideration of that condition as an existing permanent partial disability; and, (2) by rejecting morbid obesity as a preexisting permanent partial disability because it was "self-inflicted." Finally, claimant argues the Commission erred as a matter of law in denying an award against the Fund because it is not supported by competent and substantial evidence.

### THE EVIDENCE

Claimant testified in person. James Israel, a vocational rehabilitation consultant, testified for claimant in person. All the Fund's witnesses were by deposition. Claimant offered a report of James Israel as an exhibit and the deposition testimony of Dr. Eli Ronald Shuter, a neurologist. The Fund offered the deposition testimony of Dr. Philip George, an orthopedic surgeon; the deposition testimony of Dr. Harold E. Walters, also an orthopedic surgeon, and, the testimony of Mr. James M. England, a rehabilitation counselor. In making the present award, the Commission apparently ignored its original finding that claimant's testimony was true. Nothing occurred after that finding which would change the Commission's appraisal of claimant's credibility. Moreover, the ALJ's findings and credibility determination remain part of the record as a whole on the testimo-

ny of claimant and his witnesses. Thus, they are entitled to due consideration. *Davis,* 903 S.W.2d at 570–571.

In the context of the Commission's finding that claimant's testimony was true, we review that evidence. Claimant testified that he had severe sleep apnea which began possibly ten years ago. That would only support a finding the condition pre-existed the 1989 shoulder injury. The first medical diagnosis of sleep apnea occurred after the shoulder injury, but the date of diagnosis is immaterial. He has weighed three hundred and thirty pounds or more for at least five years. He previously broke his left wrist which he is "not able to fully move [it] the way [he] would like to" and it is a handicap in doing any type of work with the left wrist, it was painful as he worked. He has periodic pain and limited movement in his knees. The sleep apnea is a severe sleep condition which was surgically treated by removal of his soft pallet. The surgery failed. He has trouble walking because of his weight and a knee which underwent surgery. If he stands for a half-hour to an hour, he gets tired. He has problems bending, lifting and squatting. His conditions are getting worse. On cross-examination by counsel for the Fund, he confirmed that his sleep apnea is connected to his weight. After the 1989 shoulder injury, he was employed for approximately four months by the General Motors Corporation. He had various job assignments "to see if [he] could do them and [he] wasn't able to do them."

James Israel testified for claimant. In connection with his live testimony, the ALJ accepted his four-page evaluation of claimant as an exhibit. Claimant failed to graduate from high school. He has a GED. During his work career he performed unskilled jobs. He has no "transferable" skills. His morbid obesity "imposes severe restrictions on his physical abilities and stamina." During most of claimant's life he failed in his attempts to lose weight. "He described having sleep apnea since the early 1980's." "Since, Mr. Garibay literally falls asleep between 10—30 minutes on an average of three times during the day, sustaining work activity would be untenable. His reduced concentration re-

sulting from impaired deep sleep patterns would make attention to job details very cumbersome." The cumulative factors of claimant's conditions "simply pose an overwhelming barrier for Mr. Garibay to maintain any job." Mr. Israel concluded that Mr. Garibay cannot compete in the open labor market because of his permanent and total disability status. Mr. Israel also testified that in addition to claimant's capacity to maintain a job, his ability to find a job would be severely impaired because of the pre-existing conditions. He stated the claimant's conditions adversely affect his employability and his ability to perform, if that handicap were overcome.

Dr. Shuter, a neurologist, testified by deposition. He testified that the 1989 shoulder disability, and his *"permanent* disabilities found in claimant's lower left extremity, right upper extremity, and his sleep apnea and morbid obesity combined to a greater degree of disability to the body as a whole." (Emphasis added). He opined the 1989 disability combined with "prior permanent disabilities" resulted in permanent and total disability. On cross-examination he was asked whether his opinion "came about when [he] look[ed] at the combination of that with his pre-existing problems." His answer was, "yes." Loss of weight was possible, but not likely, and would not relieve the sleep apnea condition because the surgery which removed excess tissue from the throat as an attempt to stiffen the throat, performed the same function as losing weight, and the surgery failed to cure the sleep apnea.

The Fund offered the deposition testimony of Dr. Philip George, an orthopedic surgeon. The deposition was taken by claimant's employer before the shoulder claim was settled. Dr. George examined claimant in 1989, after the shoulder injury. Claimant was overweight, indeed, morbidly obese. He also examined claimant on August 31, 1992. He opined claimant was "capable of working with regard to the injuries caused in the accident of January 16, 1989. He rated the permanent partial arm injury at 15% of the left arm. The only question asked by counsel for the Fund was, "Did you evaluate him as to any prior disability that he might

have?" Dr. George's response was, "No. For instance, he mentioned surgery on his knee, that sort of thing. No, I did not examine his knee." Dr. George's testimony will not support finding that the pre-existing conditions were not permanent.

The Fund offered the deposition testimony of Dr. Harold E. Walters. This deposition was taken on behalf of the Fund. Dr. Walters is an orthopedic surgeon. His only contact with claimant was an examination in his office on April 8, 1992. He rated claimant's 1989 shoulder injury at approximately 20% at the level of the left shoulder joint. When asked if he had given any disability rating because of the sleep apnea he answered that he was "not sure I'm capable of rating or knowing how to rate someone for that condition, if at all." For that reason he did not rate that condition. He testified that normal weight for claimant would be one hundred and seventy pounds and he agreed that claimant was "double morbid obese." His observation regarding permanency of the obesity condition was "if it was possible for him to lose his weight, ... it would not be permanent." His opinion was conditional and not based on any medical testimony claimant could safely and successfully lose weight. Dr. Walters was asked if his examination disclosed "some industrial disability prior to his work injury in January '89 and received some additional industrial disability as a result of his injury to his left upper extremity in January of '89; is that correct?" Dr. Walters replied, "[y]es, sir." He agreed there were disabilities to combine together which gave claimant a greater disability than the normal additive sums of those disabilities. He opined that claimant was not totally disabled. "Certainly, he is totally disabled from many or most jobs on the open labor market ... there are many jobs that he is not capable of performing; therefore, it may or may not [be some job he might be able to perform] but it's possible they might have or they may have to create a certain job for him, if that answers your question." Dr. Walters acknowledged that he rated claimant's prior disability in the right upper extremity as a 20% disability which was equal to his rating for the January 1989 left shoulder disability. He thought "that they both render him disabled approximately 20% of the shoulder, both disabilities." Finally, he found that excessive walking may well cause claimant some discomfort in his knee and ankle. Dr. Walters' testimony will not support a finding claimant had no pre-existing permanent disabilities. His testimony supports a finding claimant had preexisting and permanent disabilities. It does not support the Commission's finding that he did not.

The final evidence offered by the Fund was a deposition it took of Mr. James M. England, a rehabilitation counselor. The Commission erroneously referred to James England as Dr. James England. Mr. England testified that he reviewed all of the existing authorities, consisting of the reports of Dr. Shuter, Dr. George, Dr. Walters and Dr. Burdge. He learned from claimant that he had been afflicted with the sleep apnea problem for about ten years. This evidence of the condition pre-dating the 1989 shoulder injury was the Fund's evidence. Essentially, Mr. England deferred to the medical authorities on the question of permanent total disability. In his view, if you "assume" the findings of Dr. George and Dr. Walters, claimant would be capable of doing some types of employment. "On the other hand, if I assumed what Dr. Shuter indicated that because of these combination of *disabilities* that the man could just not perform work activity, then obviously he wouldn't be employable." (Emphasis added). He disavowed any opinion of which of the conflicting doctors' opinions was correct. In fact, he made no effort to decide which of the opposing doctors' views was correct. He suggested, absent the sleep apnea or with the sleep apnea treated properly, claimant would be able to be employed. Mr. England observed that *if* claimant could find a job, he probably could *not* keep it for very long because of the sleep apnea, and there was no doubt he had sleep apnea. When asked if it was a combination of *disabilities* which placed claimant in the condition he was in at the time of the hearing, he answered, "I mean you certainly can't ignore any of them." Claimant's obesity was very much a problem, "that in itself is a disability."

## COMMISSION'S FINAL AWARD DENYING COMPENSATION

On May 29, 1997, the Commission denied an award against the Fund. It found that the Fund was created in 1943 to encourage the employment of the physically disabled in industry and serves to encourage employment of the disabled without creating a greater exposure for their employers under the compensation law than employment of persons without preexisting disabilities. From this finding, the Commission concluded the Fund would be implicated in claims only if preexisting, permanent disabilities are known or knowable by the employer at the time of hiring. Otherwise, there would be no hiring of the disabled by an employer with knowledge of the existing disability. There was a second reason for establishing the Fund, namely, to relieve an employer or his insurer of liability for the previously disabled employee's partial or total permanent disability, where that disability is not specifically attributed to an injury suffered during the employment period with that employer. *Meilves v. Morris*, 422 S.W.2d 335, 338 (Mo. 1968); *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 589 (Mo.App.1987). Knowledge of the employee or the employer of a preexisting disability is not required to satisfy the second purpose for establishing the Fund. The inquiry is whether there was a preexisting permanent partial disability, known or unknown, at the time of employment which will thereafter combine with a new disability to cause a greater disability than the new injury. The creation and implementation of the Fund was not for the sole purpose of creating employment for individuals with known disabilities. Honoring the second purpose will not lessen or detract from the first. What is required is a preexisting, permanent disability, not necessarily one which the applicant for employment knows he has and discloses to a prospective employer or one which the prospective employer discerns so that the employment will be an intentional act of hiring a disabled person. Accordingly, the Commission erred, as a matter of law, when it decided that claimant's preexisting disability of sleep apnea could not be considered as a permanent, preexisting disability because it was first medically diagnosed after the 1989 injury and, therefore, unknown to his employer prior to hiring claimant. As a question of fact, the Commission erred in concluding that sleep apnea could not be combined with the 1989 shoulder injury in determining the extent of permanent partial disability or permanent total disability because it was diagnosed after the 1989 shoulder injury. The Commission found claimant's testimony to be truthful and he testified that the condition predated the shoulder injury. There was expert testimony that the sleep apnea condition predated the shoulder injury. The Fund's evidence was the condition was preexisting. There was absolutely no evidence to support a finding that the sleep apnea condition was not a severe and long standing disability.

There is no evidence to support a finding that claimant's morbid obesity was not a permanent partial, preexisting disability at the time of the 1989 shoulder injury. The Commission noted Dr. Shuter's medical opinion that claimant's obesity and sleep apnea, together, combined with the shoulder disability caused permanent and total disability. However, it rejected a rating of the two conditions together. The relationship of the two disabilities was an unopposed fact. There is no evidence to support a finding or conclusion the two conditions cannot be rated together. There is no medical evidence to oppose Dr. Shuter's combined rating. Dr. George made no effort to consider or rate any condition or disability except the shoulder injury. Dr. Walters agreed claimant had pre-existing disabilities which combined to disable claimant to a greater degree than the shoulder injury. Mr. England declined to express an opinion as to which of the doctors' conclusions was correct. Mr. England acknowledged that obesity and sleep apnea are related, and with respect to this claimant, were serious and *disabling*. Mr. England's definition of permanent total disability was a condition which would prevent him from finding employment. He did not testify he could find a job for claimant. The expert testimony of the Fund will not support a finding that Dr. Shuter's rating it not probative of the extent of Claimant's pre-existing permanent disabilities.

Claimant's evidence regarding his left wrist, left knee and ankle and right elbow

stands unopposed as preexisting disabilities. They were so treated by the Commission prior to the second appeal. We considered them in the second opinion to be preexisting disabilities. Prior to the third award, no question was raised regarding the conditions not being preexisting disabilities which were subject to combination with the shoulder injury. Prior to the first award, the Commission had claimant's testimony regarding his disabilities and found his testimony to be true.

We find the Commission erred in entering an award denying compensation against the Fund. As a matter of law, the only evidence regarding obesity, sleep apnea and other preexisting conditions supported a finding they are permanent and disabling conditions. The only substantial evidence on the degree of disability, the testimony of claimant, Dr. Shuter and Mr. Israel, supports a finding that claimant is permanently and totally disabled. The Fund's future remedy may be found in section 287.200 RSMo 1994.

The award is reversed. The claim is remanded to enter an award of permanent and total disability.

AHRENS, P.J., and CRANDALL, J., concur.