**James MESSEX, Claimant/Respondent, Cross–Appellant,**

**v.**

**SACHS ELECTRIC COMPANY and Fireman's Fund Insurance Company, Employer/Insurer, Appellants,**

**v.**

**Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Respondent, Cross–Respondent.**

Nos. 74005, 74010.

Missouri Court of Appeals, Eastern District, Division Five.

March 16, 1999.

---

Robert W. Frayne, Bren, Przybeck & Stotler, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Karla O. Boresi, Asst. Atty.

Gen., St. Louis, for respondent/cross–respondent.

James A. Fox, Fox & Vuylsteke, St. Louis, for respondent/cross–appellant.

KENT E. KAROHL, Judge.

We have consolidated appeals of the employer and insurer with the appeal of claimant-employee (Claimant) from a final award of the Labor and Industrial Relations Commission (Commission) in a workers' compensation case. Claimant alleged an occupational disease, repetitive trauma injury that occurred in late 1992. On March 28, 1997 the Administrative Law Judge (ALJ) granted Claimant an award against employer and insurer for 17.5% permanent-partial disability of the low back and against the Second Injury Fund (Fund) for permanent-total disability benefits. On February 2, 1998 the Commission, reviewing the award of the ALJ, entered a final award finding employer and insurer liable for 75% permanent-partial disability to the low back and no liability of the Fund. We affirm the Commission's award and find no Fund liability.

The employer and insurer appeal, arguing the Commission:

[E]rred as a matter of law, misapplied and misinterpreted § 287.220 R.S.Mo. as to the second injury fund liability under the recent case of *Garibay v. The Treasurer of the State of Missouri as the Custodian of the Second Injury Fund,* 964 S.W.2d 474 (Mo.App. E.D.1998) by requiring the employee's pre-existing condition to be manifest or known by the employer and holding that the pre-existing condition was not a hindrance or obstacle to employment prior to December, 1992.

Claimant argues the Commission erred, as a matter of law, in its determination that he was not permanently and totally disabled, contrary to the overwhelming weight of the evidence he could not compete on the open-labor market. Claimant adopts the same point presented by employer and insurer as his second point.

The Fund contends the denial of permanent-total disability should be affirmed because it is supported by competent and substantial evidence, particularly the self-professed abilities of Claimant and the testimony of Dr. Ashby and Donna Abram. Secondly, it submits there is no evidence to support a finding Claimant had any existing disability at the time of the work-related back injury. The Fund argues:

[T]he undisputed evidence is that the physical labor required of Messex by Sachs at the end of 1992 caused Messex's asymptomatic degenerative back condition to escalate to the point of disability. Under Missouri's Workers' Compensation law, the employer is responsible for all this disability.

It does not contest the fact that at the time of the injury, Claimant had a preexisting degenerative disc disease. There is no dispute that the disease was not symptomatic and Claimant had no knowledge of the condition.

## Facts

The evidence supports finding the following facts. At the time of the hearing, Claimant was a fifty-six-year-old male living in Sullivan, Missouri. He completed ninth grade and obtained a GED in the Air Force, where he also learned to take care of airplane parts. His civilian employment included working as a parts person, operating machinery and labor work for various companies. Sachs Electric employed Claimant as a backhoe/heavy equipment operator for twelve years. He also operated bucket trucks, digger trucks and small cranes. He performed some manual labor, digging ditches, laying pipe and pulling wire. He frequently engaged in bending, stooping, squatting, standing, climbing and crawling. He commonly lifted weights over fifty pounds and operated a ninety-pound jackhammer.

Claimant was injured in late 1992. He had no previous back injuries. Prior to this injury, he never missed work due to injury or suffered any kind of on-the-job injury. In the three-month period immediately before the injury, he worked ten to sixteen hour days, up to seven days a week. On December 9, 1992 he first complained of back pain to a doctor. By the end of December 1992,

after the period of intensified labor came to an end, he experienced soreness and left leg pain. He did not work for two months following discovery of the injury. He then returned to work without medical restriction for one and one half months. He last worked on April 19, 1993. He testified that since he quit working, he has not noticed any improvement and, in fact, believes his condition has worsened.

Claimant offered hospital medical records of Dr. Fitzgerald, two depositions of Dr. Musich, deposition testimony of Dr. Bernstein and deposition testimony of Dr. Ashby. Employer and insurer offered the deposition testimony of Jeannine Klein, a claim's supervisor for Fireman's Fund Insurance, the records of Ellis and Associates, Inc. prepared by Donna Abram and the hearing testimony of Abram.

Dr. Fitzgerald originally treated Claimant. Dr. Kenney examined and medicated him. Dr. Kenney advised that if the leg became too bad, an operation was possible but it would not produce long-term results. Claimant's back did not improve. Prior to 1992, Claimant also consulted a chiropractor less than ten times for treatment to his shoulders. He has had no medical treatment other than medication since June 1993.

Dr. Kenney diagnosed a diffused disc bulge. He indicated that surgical decompression at L4–5 could be considered, but recommended against it. He prescribed a lumbar support. Dr. Ashby testified Claimant had a moderate to severe degenerative disc disease in the lumbar spine. He felt there was a 50% probability that Claimant would require future surgery. He opined an impairment rating of 7% due to the degenerative process aggravated to some degree by Claimant's work. He found the disability consistent with heavy work for sixteen hours a day, seven days a week for a three-month period, which potentially exacerbated Claimant's degenerative disc disease and caused it to become symptomatic.

Dr. Musich testified he examined Claimant in May 1995. He found Claimant permanently and totally disabled. His low back pain was the result of overuse produced by his employment labors. He felt the heavy work was a substantial factor and the cause of his present condition referable to his low-back and lower extremity complaints. He found there was no disability referable to the back or lower extremity prior to late 1992.

Dr. Bernstein, a psychologist and vocational expert testified Claimant had been working as a heavy equipment operator for twenty-five years and had "not acquired any transferable skills." He concluded Claimant was unable to perform sedentary work as defined in the U.S. Bureau of Labor Guidelines due to his numerous restrictions; particularly, limitations in work requirements in terms of sitting, standing, walking, bending, and lifting more than twenty-five pounds. Dr. Bernstein concluded that, considering age, lack of transferable skills and physical impairment, "claimant was unemployable in the open labor market."

Donna Abram, a rehabilitation coordinator, assessed Claimant for employer and insurer. She never examined him personally. She based her opinion on Claimant's deposition, medical reports and Dr. Bernstein's report. She also reviewed the injury form and claim for compensation. She admitted a disadvantage because she did not personally examine Claimant. However, she testified that she was still able to perform an adequate assessment. Abram disagreed with Dr. Bernstein's conclusion that Claimant could not compete in the open labor market. However, she did not know what testing protocols Dr. Bernstein implemented, how he scored and what norms he compared to Claimant. She testified that she would have administered certain other tests to Claimant in order to consider an ability to transfer his skills, particularly clerical abilities. She concluded Claimant is employable. Her opinion was based upon a survey of available jobs, without contacting potential employers, and Claimant's demonstration that he can communicate, control machinery, has common sense understanding, math ability and can compute ratios, rates and percentages. She testified Claimant could perform sedentary work and some light duties if an employer will accommodate under the ADA.

## Award of Permanent–Partial Disability

We first address the issue regarding the nature and extent of Claimant's disability. Employer and insurer do not appeal Claimant's award of 75% permanent-partial disability to his low back as a separate issue. They request alternative relief in the form of an award against the Fund for a portion of permanent-partial or permanent-total disability, or a remand for reconsideration by the Commission in light of the *Garibay* decision.[1] Claimant seeks an award for permanent-total disability, a portion to be paid by the Fund in accord with *Garibay*. The Fund seeks to affirm the Commission's award.

We review the Commission's decisions on questions of law *de novo*. *Davis v. Research Medical Center*, 903 S.W.2d 557, 560 (Mo. App. W.D.1995). We review factual issues to determine if there is substantial evidence to support the Commission's award or, in the alternative, whether the award is clearly contrary to the overwhelming weight of the evidence. *Cook v. Sunnen Products Corp.*, 937 S.W.2d 221, 224 (Mo.App. E.D.1996). We will consider all of the evidence in the light most favorable to the Commission's findings to determine if the findings are supported by the evidence. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 471 (Mo.App. S.D.1992).

Claimant argues that pursuant to Section 287.020.7 RSMo 1994[2] he is totally disabled. Under the Missouri Workers' Compensation Act, "total disability" is defined as the inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident. Section 287.020.7. Undisputed facts support a finding that Claimant cannot return to his former employment or any job requiring heavy labor. However, the test for permanent-total disability is whether he is able to competently compete in the open labor market given his condition and situation. *Reiner v. Treasurer of State of Missouri*, 837 S.W.2d 363, 367 (Mo.App. E.D. 1992). Specifically, the pivotal question is whether an employer can reasonably be expected to hire this employee, given his present physical condition, and reasonably expect him to successfully perform the work. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 853 (Mo.App. S.D.1995). Thus, our inquiry into permanent-total disability is a factual one: whether Claimant is employable. We will not substitute our judgment on issues of fact where the Commission was within its powers, even if we would arrive at a different initial conclusion. *Lawson*, 833 S.W.2d at 471; Section 287.495.

On the issue of degree of disability, the majority of the Commission found Claimant was not permanently and totally disabled, which modified the ALJ's decision. The ALJ found 17.5% permanent-partial disability of the back, and permanent-total disability resulting from a combination of the work-related injury and the degenerative disc disease. He expressly "based" his finding upon Claimant's testimony, medical records and deposition testimony. However, the Commission's review found Abram's testimony, that Claimant could find employment and was able to work, more credible than the medical opinion that he could not compete in the open labor market. In support, it cited the definition of permanent-total disability. It found a permanent-partial back disability of 75% for which the employer and insurer were liable.

The following medical evidence was presented. Claimant's treating physician, Dr. Kenney, concluded Claimant could perform light work, but no heavy work. Dr. Ashby testified Claimant was capable of working with a lifting restriction of twenty-five pounds and no repetitive bending or stooping. Dr. Musich opined permanent-total disability that occurred after late 1992. Dr. Bernstein opined Claimant could not compete in the open labor market.

The consistent diagnosis of Claimant is moderate to severe degenerative disc disease in the lumbar spine with a disc protrusion. This condition pre-existed the work-related event. Like the ALJ, the Commission re-

---

1. This court decided *Garibay*, 964 S.W.2d 474 (Mo.App. E.D.1998) on March 3, 1998, approximately one month after the award of the Commission.

2. All statutory references are to RSMo 1994, unless otherwise indicated.

viewed the medical testimony and records offered by Claimant. It also reviewed the hearing testimony of Abram. It acknowledged the opinions of Dr. Musich and Dr. Bernstein, which opined permanent-total disability and an inability to compete in the open labor market. It acknowledged Dr. Kenney's testimony regarding physical limitations. It considered Dr. Ashby's opinion of 7% permanent-partial disability of the Claimant's low back and his testimony that Claimant's back condition was approximately 75% preexisting and 25% from primary injury, based on pure speculation. It recognized Abram's opinion that Claimant is employable and could perform sedentary and some light work. It found:

> [T]he vocational evaluation done by Donna Kisslinger Abram to be more persuasive than that of Dr. Bernstein in light of what claimant states he is able to do and because it is difficult to conceive that claimant would pick up no transferable skills at his previous jobs. Her evaluation listed transferable skills which claimant would have necessarily picked up from his previous employment. From his previous employment, claimant picked up the ability to compare and judge; observe characteristics in data, people and things; communicate with others; control machinery; understand instructions; do math; read resources; motor coordination; manual dexterity; and eye-hand-foot coordination. Based on claimant's skills and functional ability, Ms. Abram concluded claimant is able to be an overhead crane operator; dinkey operator; hydro-pneumatic operator; boom conveyor operator; still tender; metal finisher; silk screen printer on a machine; glass inspector; dump operator; crown assembly machine operator; production assembler; or a buffing machine tender.

Based on these observations, the two commissioners found an employer would reasonably be expected to hire Claimant in his present condition and reasonably expect Claimant to perform the duties of the job for which he was hired.

Thus, the Commission's decision is supported by sufficient and competent evidence and it is not against the weight of the evidence. Although there was some evidence of permanent-total disability, of the five experts whose testimony or records were submitted, three found Claimant employable. The Commission considered the conflicting expert opinions and determined which it would accept, which binds the reviewing court. *E.g., Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 835 (Mo.App. W.D.1996). Specifically, the Commission found the testimony of Abram more persuasive than Claimant's expert, Dr. Bernstein, when coupled with Claimant's testimony of his abilities and the medical evidence. The Commission is the sole judge of the credibility of witnesses, and the weight and value of the evidence. *Lawson,* 833 S.W.2d at 470–71.

On the issue of the extent of permanent-partial disability, the majority determined Claimant suffered a 75% disability. Dr. Ashby opined 7%, the ALJ concluded 17 1/2% and the majority 75% of the body as a whole referable to the low back. The majority found he has an extensive work-related injury, his activities are limited since his injury and his residual functional capacity is restricted. Therefore, there is evidence to support finding disability somewhere between 7% and permanent-total disability. Seventy-five percent is clearly within the range of evidence. Claimant and employer and insurer do not appeal the award of 75% for the extent of permanent-partial disability. We find no error. Point denied.

### Fund Liability

We affirm the award of permanent-partial disability and, therefore, neither the Fund, nor the employer and insurer, is liable for lifetime disability payments. However, we also consider Fund liability for a portion of permanent-partial disability payments. The employer and insurer, and Claimant, argue that the Fund is partially liable pursuant to Section 287.220.1. The Fund argues: (1) there is no evidence to support a finding that Claimant had any disability at the time of the work injury; and, (2) the Commission correctly found that the physical labor required of Claimant by the employer at the end of 1992 caused his asymptomatic degen-

erative back condition to escalate to the point of disability.

Section 287.220.1 provides, in pertinent part, *when* and *how* the Fund incurs liability:

After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, **the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained** shall then be determined by that administrative law judge or the commission **and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability,** and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund[.] [Emphasis added].

Fund liability, specifically interpreting Section 287.220, has been the topic of debate and numerous recent decisions. In fact, the employer and insurer, and Claimant, rely on *Garibay v. Treasurer of the State of Missouri as Custodian of the Second Injury Fund*, 964 S.W.2d 474 (Mo.App. E.D.1998), which was handed down approximately one month after the Commission's decision. They assert that in light of *Garibay*, the Commission erred as a matter of law, misapplied and misinterpreted Section 287.220 when it required Claimant's preexisting condition to be manifest or known by the employer. They also claim error because Claimant's preexisting condition was not held to be a hindrance or obstacle to employment prior to the work-related injury in December 1992.

Moreover, they submit conclusions of law of the ALJ regarding the Fund were correct. The ALJ concluded a "'previous disability' should be interpreted to mean a previously existing condition that a cautious employer could reasonably perceive as having the potential to combine with a work related injury so as to produce a greater degree of disability than would occur in the absence of said condition." *Wuebbeling v. West County Drywall*, 898 S.W.2d 615, 620 (Mo.App. E.D.

1995). In this case, Claimant's preexisting disease could have been discovered by a medical examination before the work-related injury, but was not symptomatic and was not known. Nevertheless, the ALJ found this does not mean the preexisting disability did not exist and that the employer must be liable for all disability as if it did not exist. The conclusions of the ALJ which explain his award were:

Here, there was a potential of claimant's degenerative back condition combining with a work related injury to cause serious disability. Indeed, when the injury occurred the claimant was unable to return to work. (This result was because of the primary injury and the preexisting condition). The claimant does physical labor and this is the only type of work he has done for twenty-five years. The purpose of the fund is to protect the employer while compensating the employee in such a situation. This is the incentive for employers to hire someone who may have a serious condition with the potential for great disability. This reasoning has been followed in *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57 (Mo.App. E.D.1996) ... This injury was a severe aggravation of an extremely poor low back condition that included a disc protrusion and spinal stenosis.

Pursuant to the ALJ's findings, the employer and insurer, and Claimant, argue there is no requirement the condition must be known, symptomatic and have caused Claimant to miss work or suffer diminished earnings prior to the work-related injury that combines with the condition to render the employee disabled. They contend that such a requirement is inconsistent with the purpose of the Fund. *Wuebbeling*, 898 S.W.2d at 620. They extend this argument by applying *Garibay* and emphasizing that the Fund was implemented not only for the purpose of creating employment for individuals with known disabilities. "What is required is a pre-existing, permanent disability, not necessarily one which the applicant for employment knows he has and discloses to a prospective employer or one which the prospective employer discerns so that the em-

ployment will be an intentional act of hiring a disabled person." *Garibay*, 964 S.W.2d at 479. Therefore, they assert the proper focus is on the date of primary injury and whether the preexisting injury combines to be a hindrance or obstacle to employment or re-employment. They submit this Court must look at the worker on the date of disability to determine whether his condition, at that time, will affect his employability.

The Fund relies on *Roller v. Treasurer of State of Mo.*, 935 S.W.2d 739 (Mo.App. S.D. 1996) and *Miller v. Wefelmeyer*, 890 S.W.2d 372 (Mo.App. E.D.1994) as similar cases. It submits these cases hold that if a work-related injury causes a preexisting, but non-disabling condition to escalate to the level of disability, the employer is liable for all of the resultant disability. The Fund distinguishes *Garibay* on the basis that that case involved merely an undiagnosed, existing and disabling condition. It argues this is a case of an undiagnosed, unknown and non-disabling preexisting condition. In *Miller*, Claimant had a dormant eye disease and the work injury caused the disease to become symptomatic, ultimately resulting in a loss of sight in the injured eye. *Miller v. Wefelmeyer*, 890 S.W.2d 372 (Mo.App. E.D.1994). This court rejected the argument that the claim against the employer should be diminished by the extent of the preexisting dormant condition. *Id.* Similarly, in *Roller* the court held the Fund was not liable when a work injury caused asymptomatic spondylolisthesis to become symptomatic. *Roller v. Treasurer of State of Mo.*, 935 S.W.2d at 739 (Mo.App. S.D.1996). Accordingly, the Fund argues, "the employer is responsible for all permanent disability, that is loss of use or function, caused by work-related injuries." Conditions that do not cause a loss of use or function have not been denominated "disabilities" for purposes of workers' compensation, even if they might at some future date become disabling. *E.g. Wilhite v. Hurd*, 411 S.W.2d 72 (Mo.1967)(cited with approval in *Wuebbeling v. West County Drywall*, 898 S.W.2d 615, 619 (Mo.App. E.D.1995)).

In preparing its award, the Commission extensively reviewed the claim against the Fund beginning with a recitation of section 287.220.1. The majority presented the issue as follows:

Claimant has a pre-existing condition, but is it one a cautious employer could reasonably perceive as having the potential to combine with a work related injury? Whether the Second Injury Fund is liable under the facts presented here hinges on whether § 287.220.1 RSMo and its interpreting cases require an employee's preexisting condition to be manifest, foreseeable or known by the employer.

The Commission looked for guidance to other jurisdictions, Arkansas, Tennessee, Colorado and federal cases including those deciding Federal Longshoremen's and Harbor Workers' Compensation Act cases. The majority acknowledged that one of the purposes of the Fund is to protect employees with a preexisting disability from being discriminated against by employers. They further acknowledged:

A second purpose is to shield employers from being liable for injuries sustained above and beyond the total disability sustained from a compensable injury. Requiring the pre-existing disability to be manifest or foreseeable by the employer fulfills both of these purposes. An employer cannot discriminate against an employee for a pre-existing condition that is unknown to both parties. If a pre-existing condition is asymptomatic until triggered by a compensable work injury, the employer cannot be said to be compensating the employee for more than what the employee sustained while working. "[T]he Commission must determine the degree of percentage of the employee's disability that is attributable solely to the pre-existing condition at the time of the last injury in order to compute the total disability compensation to which an employee is entitled from the Second Injury Fund." *Carlson v. Plant Farm*, 952 S.W.2d 369 (Mo.App. [W.D.] 1997). The Commission cannot determine the pre-existing degree of disability without expert medical testimony and such a determination cannot be based upon speculation.

The Second Injury Fund should be protected from liability from an unknown or

asymptomatic congenital condition, which is not a disability until triggered by a work injury or accident. An employer should not be allowed to shirk its responsibility when an employee sustains a compensable injury or accident that causes a permanent partial disability by trying to apportion its responsibility to the Second Injury Fund. Claimant may have continued working for years without triggering his condition. Eventually, he may have experienced some symptoms from his condition with age, but Dr. Ashby's opinion was that claimant's condition would not have become symptomatic "to the degree if he tried to continue doing heavy work" (Tr. 153). Claimant's condition prior to December 1992 was not a hindrance or obstacle to employment. We find the Second Injury Fund is not liable.

Our consideration of Fund liability involves a two-step analysis. First, we must decide if this case falls within the perimeters of *Garibay v. Treasurer of the State of Missouri as Custodian of the Second Injury Fund,* 964 S.W.2d 474 (Mo.App. E.D.1998). If *Garibay* applies, then we remand to the Commission for reevaluation of employer's and insurer's, and the Fund's, relative liability pursuant to *Garibay.* Second, if this is not a *Garibay* case, we must decide if there is competent and substantial evidence of a preexisting disability. Without such proof, any claim against the Fund must fail.

When a claim is made against the Fund for permanent disability compensation, statutory language and case law make it mandatory that the claimant provide evidence to support a finding, among other elements, that he had a preexisting permanent "disability". Section 287.220.1; *Leutzinger v. Treasurer of Missouri, Custodian of Second Injury Fund,* 895 S.W.2d 591 (Mo.App. E.D.1995) (emphasis added). The disability, whether known or unknown, must exist at the time the work-related injury was sustained *and* be of such seriousness as to constitute a hindrance or obstacle to employment or re-employment should the employee become unemployed. *Id.; Garcia v. St. Louis County,* 916 S.W.2d 263, 266 (Mo.App. E.D.1995). There is no factual dispute that at the time of the work injury, Claimant had a preexisting degenerative disc disease. However, there is much dispute over the seriousness of his preexisting condition, and whether it constitutes a hindrance or obstacle to employment or re-employment; hence, a "disabling" condition.

The primary dispute in *Garibay* focused on the *time* of diagnosis of the preexisting *disability* relative to the work injury. Indeed the Commission there erred, as a matter of law, when it required knowledge of the preexisting disability. The court found "[t]he inquiry is whether there was a preexisting permanent partial disability, known or unknown, at the time of employment which will thereafter combine with a new disability to cause greater disability than the new injury." *Garibay,* 964 S.W.2d at 479. In *Garibay,* the evidence only supported a finding of permanent and disabling conditions, which existed before the work-related injury. Thus, the evidentiary facts of *Garibay* are different than those presented here. In that case, Mr. Garibay testified that he experienced severe sleep apnea for approximately ten years. Two physicians agreed Garibay had other preexisting disabilities that combined to disable him to a greater degree than the work injury alone. The evidence regarding his left wrist, left knee and ankle and right elbow stood unopposed as preexisting disabilities. The court held "[t]here was absolutely no evidence to support finding that the [claimant's] sleep apnea condition was not a severe and longstanding disability" before the work-related injury. *Id.* The crux of *Garibay* is that an *otherwise-qualified disability* could not be ignored just because it was not diagnosed before the work-related injury, was unknown to the employer, or the claimant did not know what he had. *Id.*

A separate facet of workers' compensation case law provides recovery for a preexisting, but *non-disabling,* condition that escalates to the level of disability because of a work-related injury. The case of *Miller v. Wefelmeyer,* 890 S.W.2d 372 (Mo.App. E.D.1994) states, in relevant part:

> If substantial evidence exists from which the Commission could determine that the claimant's preexisting condition did not constitute an impediment to performance

of claimant's duties, there is sufficient competent evidence to warrant a finding that the claimant's condition was aggravated by a work-related injury. *Weinbauer v. Grey Eagle Distributors,* 661 S.W.2d 652, 654 (Mo.App. E.D.1983).

In *Miller,* this court affirmed the liability of employer and insurer for the complete loss of the employee's right eye subsequent to the work injury, even though he was diagnosed with a preexisting condition in both eyes. There was evidence to support a finding the preexisting condition was dormant, did not preclude the employee from performing his job and became apparent only after the work injury.

■ This is not a *Garibay* case. Application of *Garibay* mandates the presence of an *otherwise-qualified* disability. The preexisting disability need not be known by the employee or the employer, prior to the work injury, to establish Fund liability. However, Fund liability is only triggered by a finding of the presence of an actual and measurable disability at the time the work injury is sustained. The "degree or percentage of disability" which existed prior to the work injury and the resultant disability must be deducted from the combined disability for calculation of Fund liability. Section 287.220.1. If all of Claimant's disability is from the work injury, then there is no Fund liability. However, if there is any percentage of Claimant's disability that is not attributable to the work injury, then the Fund becomes liable for the difference. The employer and insurer, and Claimant, are required to offer evidence to support a finding that apportions the percentage of the work-related injury and the percentage of the degenerative disc disease. *See Miller,* 890 S.W.2d 372 at 376. The extent or percentage of disability from the preexisting condition must be ascertained if Section 287.220.1 is to be given any meaning.

■ The percentage of Claimant's permanent-partial disability after the work-related injury has been established at seventy-five percent of the body as a whole, referable to the low back. Our inquiry begins by looking at the worker on the date of disability to determine whether the preexisting con-

dition will affect his future employability. We must discern and differentiate the percentages attributable to the work-related injury and the preexisting condition. In this case, the Fund could be liable for any difference between the resultant percentages because Claimant's degenerative disc disease is real and provable, even though it was asymptomatic and unknown. However, there must be evidence to support the extent Claimant's degenerative condition contributes to his degree of disability. The nature and extent of the permanent-partial preexisting condition must be proven by a reasonable degree of certainty. *Griggs v. A.B. Chance Co.,* 503 S.W.2d 697, 703 (Mo.App.1973). Expert opinion evidence is necessary to prove the extent of the preexisting disability. *See Reeves v. Midwestern Mortgage Co.,* 929 S.W.2d 293, 296 (Mo.App. E.D.1996); *Plaster v. Dayco Corp.,* 760 S.W.2d 911, 913 (Mo. App.1988).

The expert opinions of three medical doctors were introduced into evidence. Credibility of these witnesses was not disputed and not contested here. All of the doctors opined the nature of Claimant's preexisting condition as degenerative disc disease. However, opinion on the extent of the condition varied widely. Dr. Musich, who testified via deposition on behalf of the Claimant, did not rate any preexisting permanent disability. Based on a reasonable degree of medical certainty, Dr. Musich testified that "the degenerative disc disease that Mr. Messex was exhibiting did preexist his back pain that he developed in the – towards the end of 1992." Dr. Musich opined that the abusive amount of work Claimant performed in late 1992 was the catalyst for Claimant's symptoms and complaints. He also testified that there was no combined effect and that the intensified labor at the end of 1992 caused all of Claimant's back pain. He found that Claimant had no back problems or complaints prior to late 1992.

Dr. Ashby testified by deposition for the employer and insurer. He opined a degenerative disc disease that existed prior to 1992. It was his opinion that Claimant had a seven percent permanent-partial disability referable to the low back. He further opined the

impairment was seventy-five percent preexisting and twenty-five percent from the primary injury. However, he qualified that his opinion was based on "pure speculation." Dr. Ashby also testified that intense, heavy work could exacerbate the degenerative disc disease and cause it to become symptomatic. Dr. Ashby was the only medical doctor who rated the preexisting condition separate from the work injury and all of the resultant disability. Finally, Dr. Kenney's medical records were introduced. He diagnosed degenerative disc disease, but did not rate that condition.

■ We find the expert medical testimony supports a conclusion that Claimant's preexisting condition produced no degree of disability until his work-related injury in late 1992, and would not be disabling but for the 1992 injury. Drs. Musich and Kenney did not rate the preexisting condition as a separate entity. In fact, Musich was the only medical doctor who discerned the extent of Claimant's preexisting disability to be no disability at all prior to late 1992. Dr. Ashby gave separate ratings based on pure speculation. Speculation is not enough. The evidence consistently supports finding Claimant never had any problems, complaints, limitations, symptoms or indications of degenerative disc disease until the intensified period of labor in late 1992. The record is devoid of substantial and competent evidence to support the extent of the degenerative disc disease thereafter providing some evidence to support a finding that Claimant had a disability prior to the work injury. There is no evidence that the preexisting degenerative disc disease combined with the work-related injury to create a disability greater than the work injury alone. Without proof of the extent of a preexisting disability, the Fund cannot be liable. We find no error in the Commission's determination that Claimant's permanent-partial disability was wholly attributable to the work-related injury. Thus, the Commission's decision is not erroneous or against the overwhelming weight of the evidence. Point denied.

Accordingly, we affirm the Commission's award of seventy-five percent permanent-partial disability of the body as a whole referable to the low back. We affirm the Commission's decision, which found no Fund liability. We deny remand to the Commission for consideration in light of *Garibay*, 964 S.W.2d 474 (Mo.App. E.D.1998).

ROBERT G. DOWD, Jr., C.J. and ROBERT E. CRIST, Senior Judge, concur.