Zelda WALLS, Appellant,

v.

TREASURER OF MISSOURI, Custodian of the Second Injury Fund, Respondent.

No. WD 66482.

Missouri Court of Appeals, Western District.

Sept. 19, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 2006.

Application for Transfer Denied Dec. 19, 2006.

Jerrold Kenter, Kansas City, MO, for appellant.

Benita M. Seliga, Kansas City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Ms. Zelda Walls appeals a final award issued by the Labor and Industrial Relations Commission of Missouri (Commission), affirming the award of an Administrative Law Judge (ALJ) of the Missouri Division of Workers' Compensation denying Second Injury Fund benefits. The Commission found that Ms. Walls did not have a preexisting disability at the time of her second injury entitling her to compensation. We affirm.

In August 2001, Ms. Walls injured her neck scanning a large bag of dog food as a cashier at Wal–Mart. She went to Research Medical Center and was diagnosed with a herniated disc. In July 2002, Dr. Phillip Hylton operated on her neck, and a few months later, he determined that Ms. Walls had reached her full potential for medical recovery and ordered permanent work restrictions to lift no more than thirty pounds.

In December of that year, Ms. Walls went to the Baptist–Lutheran Medical Center Emergency Room due to weakness, numbness, slurred speech, clumsiness, and difficulty moving. Ms. Walls was admitted to the hospital, and an MRI of her head revealed white matter lesions on the brain indicative of multiple sclerosis (MS). One month later, another MRI confirmed the diagnosis of MS.

Before going to Baptist–Lutheran, Ms. Walls had never been told she had MS. She testified that before her neck injury she missed work on separate occasions because of headaches, blurred vision, and esotropia, or an inward turning of the eye.

Dr. Allen Parmet, an occupational medicine specialist and expert witness for Ms. Walls, testified that MS is a progressive disease that is very difficult to diagnose. In order to diagnose MS, "at least two different neurologic events not physically associated in time or space ... must occur at different times separated by calendar time." Ms. Walls opines that the headaches and eye problems indicate she had MS before her neck injury.

After examining Ms. Walls, Dr. Parmet testified that the combination of the neck injury and the MS rendered Ms. Walls totally disabled. When asked whether Ms. Walls had MS before the neck injury, Dr. Parmet answered that he could not say within a reasonable degree of medical certainty that the disease existed before that date; however, he did state it was more likely than not. He found no preexisting disabilities from the symptoms of MS before the neck injury and the first manifestation of physical limitations due to MS did not occur until the summer 2002.

Since her neck injury, Ms. Walls has had pain in her neck and right arm, and symptoms of MS. Both parties agree that Ms. Walls is permanently and totally disabled from the neck injury and MS.

After a hearing, the ALJ found that Ms. Walls was ineligible for Second Injury Fund benefits because she suffered no hindrance or obstacle to employment from her headaches and blurred vision, and any symptoms of MS she may have demonstrated were not disabling before the neck injury. Additionally, the ALJ found that Ms. Walls was not disabled from a combination of the neck injury and any preexisting condition. The Commission reviewed the evidence and affirmed the ALJ's decision.

Ms. Walls raises one point on appeal: The Commission erred in denying Second Injury Fund liability because sufficient competent evidence to warrant an award was presented. "The Commission's decision is upheld if it is supported by competent and substantial evidence on the whole record." *Nunn v. C.C. Midwest,* 151 S.W.3d 388, 394 (Mo.App. W.D.2004). "When the Commission affirms or adopts the findings of an ALJ ... we review the decision and findings of the ALJ as adopted by the Commission." *Gassen v. Lienbengood,* 134 S.W.3d 75, 79 (Mo.App. W.D.2004).

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other ... (4) That there was not sufficient competent evidence in the record to warrant the making of the award[.]

§ 287.495.1.[1]

"Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Nunn,* 151 S.W.3d at 395. The award is not supported if it "is contrary to the overwhelming weight of the evidence." *Id.*

The Second Injury Fund was created under section 287.220. One purpose of the Fund is to encourage employers to hire partially disabled applicants, and, if injured on the job, the employer's exposure to liability would be limited. *Gassen,* 134 S.W.3d at 79. Further, the Fund is to provide compensation for that portion of the disability attributed to the preexisting condition. *Id.*

"The preexisting disability need not be known by the employee or the employ-

1. Statutory references are to RSMo. (2000), unless otherwise indicated.

er, prior to the work injury," but the claimant must establish that "an actual and measurable disability" existed at the time. *Messex v. Sachs Elec. Co.*, 989 S.W.2d 206, 215 (Mo.App. E.D.1999).[2] The disability must have been "of such seriousness as to constitute a hindrance or obstacle to [her] employment." *Gassen*, 134 S.W.3d at 81 (citations omitted).

The parties stipulated that Ms. Walls had a permanent partial disability resulting from the injury to her neck. The ALJ found little evidence to support the contention that Ms. Walls suffered any hindrance or obstacle to employment before her neck injury. She missed work for one week when she had trouble with her eyes. The only documented eye problem resulted in eyeglasses to correct myopia and esotropia. Her headaches supposedly resulted from a concussion in the '70s and a three-day headache in 2001 reported as migraines combined with allergy symptoms. The ALJ found that evidence insufficient to demonstrate a hindrance or obstacle to Ms. Walls' employment. The deterioration due to her MS, resulting in her complete disability, was not evident until one and a half years after the work-related injury; and Dr. Parmet stated that she did not have any disabling symptoms of MS before summer 2002, well after her neck injury.

"Preexisting conditions are not denominated 'disabilities' as of the date of the second injury simply because at some point in the future they combine with that injury to render the claimant permanently and totally disabled." *Id.* In this case, the first disabling feature of Ms. Walls' MS was found about one year after her neck injury. Even if she had MS before her neck injury, it was not disabling until well after the injury. Furthermore, the ALJ found that Ms. Walls was not "disabled from a combination of the last accident and any pre-existing condition as defined by law." Therefore, she is not eligible for recovery from the Second Injury Fund.

Ms. Walls' argument that the *Garibay* analysis applies in this case is incorrect because there must be an otherwise-qualified disability that was undiagnosed or unknown before the second injury. In that case, there was sufficient evidence through expert testimony that Mr. Garibay had sleep apnea, which was disabling prior to the work-related injury. *Messex*, 989 S.W.2d at 214–15 (discussing *Garibay v. Treasurer of the State of Missouri*, 964 S.W.2d 474 (Mo.App. E.D.1998)[3]). Here, the ALJ found that Ms. Walls was not disabled by the symptoms of MS at the time of the work accident, thus making *Garibay* inapplicable.

In conclusion, viewing the record as a whole, there is competent and substantial evidence to support the Commission's award. The judgment of the Commission denying Second Injury Fund liability is affirmed.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J. concur.

---

**2.** Overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

**3.** Overruled on other grounds by *Hampton*, 121 S.W.3d at 223.