With respect to the April 18, 2014 primary injury to his left shoulder, the Commission

found that Klecka had a 35% PPD of the left shoulder and 15% PPD of the body-as-a-whole for

the resulting psychiatric injury referable to depression. Based on these findings, Klecka had one

preexisting disability "equaling a minimum of fifty weeks of permanent partial disability" - the

2007 right shoulder injury.

 The Commission then addressed the expert opinion evidence regarding Klecka's claim

for PTD against the Fund. Klecka relied primarily on the expert medical opinions of Dr. David

Volarich, and the expert vocational opinions of Ms. Dolores Gonzalez and Mr. James England.

Dr. Volarich opined that Klecka was PTD as a result of the primary left shoulder injury in

combination with Klecka's prior injuries and medical conditions including the 1981 head injury,

the 2005 thumb injury, the 2006 hernia, and the 2007 right shoulder injury. Likewise, Ms.

Gonzalez and Mr. England, for their part, opined that as a result of the same combination of

primary injury and prior injuries, medical conditions, and restrictions, along with the non­

medical considerations such as his age, work experience and history, education, and training,

Klecka was not capable of any competitive work in the open job market.

 The Commission reversed the award based on its interpretation of section 287 .220.3 that

to establish Fund liability for PTD benefits, Klecka's burden was to prove that the combination

of (1) one qualifying preexisting disability equaling a minimum of 50 weeks of PPD and (2) the

disability resulting from the primary iajury rendered him PTD. And since Klecka's experts and

the ALJ additionally considered Klecka's other injuries and disabilities as well as the foregoing

non-medical considerations, he failed to carry his burden of proof.

 5
arising after that date, to which subsection 3 applies. It is undisputed here that subsection 3 of

section 287.220 applies to this case.4

 Section 287.220.3 provides, in relevant part:

 (1) All claims against the second injury fund for injuries occurring after January 1,
 2014, . . . shall be compensated as provided in this subsection.

 (2) No claims for permanent partial disability occurring after January 1, 2014, shall
 be filed against the second injury fund. Claims for permanent total disability
 under section 287.200 against the second injury fund shall be compensable only
 when the following conditions are met:

 (a) a. An employee has a medically documented preexisting disability
 equaling a minimum of fifty weeks of permanent partial disability
 compensation according to the medical standards that are used in
 determining such compensation which is:

 (i) A direct result of active military duty in any branch of the
 United States Armed Forces; or
 (ii) A direct result of a compensable injury as defined in
 section 287.020; or
 (iii) Not a compensable injury, but such preexisting disability
 directly and significantly aggravates or accelerates the
 subsequent work-related injury and shall not include
 unrelated preexisting injuries or conditions that do not
 aggravate or accelerate the subsequent work-related injury;
 or
 (iv) A preexisting permanent partial disability of an extremity,
 loss of eyesight in one eye, or loss of hearing in one ear,
 when there is a subsequent compensable work-related
 injury as set forth in subparagraph b of the opposite
 extremity, loss of eyesight in the other eye, or loss of
 hearing in the other ear; and

4
 “The standards for determining the Fund’s liability for permanent partial and permanent total
disability benefits vary depending on which subsection applies.” Dubuc, 597 S.W.3d at 378.
The Supreme Court of Missouri clarified that “[section] 287.220.3 applies to all PTD or PPD
claims against the [F]und in which any injury arising out of or in the course of employment,
including the subsequent compensable injury, occurred after January 1, 2014.” Cosby v.
Treasurer of State, 579 S.W.3d 202, 207 (Mo. banc 2019) (emphasis added). In the present case,
Claimant’s primary injury that precipitated his PTD claim against the Fund occurred after 2014;
therefore, the Commission correctly applied section 287.220.3 to the present case.
 8
 b. Such employee thereafter sustains a subsequent compensable work­
 related injury that, when combined with the preexisting disability, as set
 forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph,
 results in a permanent total disability as defined under this chapter[.]

 Discussion

 Klecka brings this appeal in two points. In point one he claims the Commission

misinterpreted section 287.220.3. In point two, he asserts the Commission ignored the

overwhelming weight of the evidence in finding he failed to prove he was PTD under section

287.220.3. We need not address point two because we agree with Klecka that the Commission

misinterpreted section 287.220.3. Therefore, we reverse the Commission and award Klecka PTD

benefits against the Fund based on what we consider the correct interpretation of section

287.220.3 - that once Klecka proved he had at least one preexisting disability equaling at least 50

weeks PPD, which he did through his 81-week right shoulder injury from 2007, Klecka's experts

properly considered that disability in combination with the 141-week left shoulder/depression

disability resulting from the primary claim along with his other past medical and non-medical

facts that were relevant and proper to the consideration under section 287.020.6 of whether

Klecka was PTD.

1. Who pays when an employee becomes permanently and totally disabled after
 a work-related injury - the employer or the Fund?

 In large measure, this case and the meaning of the 2013 amendments to section 287.220.3

present a simple choice: Which entity, the employer5 at the time of the last injury or the Fund,

should be responsible for an employee's PTD benefits. This question fundamentally embodies

the worker's compensation bargain. Zueck v. Oppenheimer Gateway Properties, Inc., 809

5We recognize that Klecka's settlement with his employer precludes any finding of liability
against the employer here but we include the employer for purposes of our analysis.
 9
 With the 1943 enactment of section 287.220,the Fund was established. The legislature

had two main principles in mind,one an aspirational goal and the other a financial incentive to

achieve that goal. The overarching goal was and is to encourage employers to hire disabled

citizens. Garibay v. Treasurer ofState ofMissouri as Custodian ofSecond Injury Fund, 964

S.W.2d 474,479 (Mo. App. E.D. 1998); Treasurer ofState-Custodian ofSecond Injury Fund v.

Witte, 414 S.W.3d 455,460 (Mo. bane 2013) ("The purpose of the fund is 'to encourage the

employment of individuals who are already disabled from a preexisting injury, regardless of the

type or cause of that injury."'). To accomplish that goal,the Fund relieves an employer or his

insurer of liability for the employee's preexisting disability and limits the employer's liability to

the amount of disability resulting from the last injury. Harris v. Treasurer ofState, 192 S.W.3d

531,538 (Mo. App. E.D. 2006) (citing Stewart v. Johnson, 398 S.W.2d 850,853 (Mo. bane

1966)).

 In that context,section 287.200,the general statute governing PTD claims,and section

287.220,the provision that determines when the Fund is liable for such claims,are the principal

provisions we look to in order to answer the question posed by this case and any other PTD case

in which it is alleged that the employee's PTD status is the result in part of disability that

preexists the last injury - who pays? If the claimant is PTD and satisfies the requirements of

section 287.220.3,the Fund pays. If not,the employer pays.

 And these sections are to be read together. The legislature has made that clear here in its

2013 amendments to section 287.220.3. With its fundamental declarative statement in

subparagraph (2),"Claims for permanent total disability under section 287.200 against the

second injury fund shall be compensable only when the following conditions are met: . . . ," the

legislature has expressed its intent that PTD claims against the Fund are still governed by the

 11