James A. TIDWELL,
Claimant/Appellant,

v.

KLOSTER COMPANY,
Employer/Respondent,

and

Commercial Union Ins. Co., Insurer,

and

Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Additional Party/Respondent.

No. ED 75998.

Missouri Court of Appeals,
Eastern District,
Division Two

Dec. 7, 1999.

Robert G. Kister, Dodson, Breeze, Kister, Roberts & Millan, L.C., Hillsboro, for appellant.

Susan M. Kelly, Hinshaw & Culbertson, St. Louis, for employer/respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Beverly E. Temple, Asst. Atty. Gen., St. Louis, for Second Injury Fund.

CRANE, Presiding Judge.

In this workers' compensation case, claimant, James A. Tidwell, appeals from the award of the Labor and Industrial Relations Commission [Commission] allowing compensation for permanent partial disability for injury to his left foot and heel and denying relief from the Second Injury Fund. Claimant asserts that the Commission erred in refusing to consider claimant's evidence of pre-existing permanent partial disability and the combined effect of the pre-existing and current injury for purposes of Second Injury Fund liability. Claimant further asserts that the Commission erred by failing to award $4,216.10 in stipulated unpaid temporary total disability benefits and argues he is entitled to 10% statutory interest thereon. We amend the award to include $4,216.10 in unpaid temporary total disability benefits. The Commission's award ordered interest paid as required by law. As required by law, interest is due on the $4216.10 from thirty days after the date of stipulation. We affirm as amended to include the unpaid temporary total disability benefits.

*Factual Background*

On May 20, 1994, while claimant was employed by Kloster Building Group Incorporated, claimant jumped off a trailer in the process of unloading steel and broke his heel. He was treated at an emergency room and subsequently underwent three surgical procedures and physical therapy. Claimant was released from care but has not returned to work.

Claimant had suffered prior injuries which resulted in workers' compensation awards: He injured his left knee in July, 1985, his right arm on March 7, 1986, and his right knee and his back in a two-story fall on June 17, 1986.

*Procedural History*

On May 9, 1997 claimant filed an amended claim for compensation for the May 20, 1994 injury to his left foot and heel. Claimant also made a claim against the Second Injury Fund for compensation for combined permanent disabilities from prior injuries suffered on March 7, 1986 and June 17, 1986 to his upper right extremity and right knee.

At the hearing before the Administrative Law Judge [ALJ], claimant called Dr. Jerome Levy, M.D., who had examined claimant on May 28, 1987. The examination was limited to claimant's four extremities. Based on his examination, Dr. Levy rated claimant as having a permanent par-

tial disability of 55% of the left lower extremity at the ankle. Dr. Levy testified that he had accepted the percentages of permanent disability reflected in a workers' compensation settlement stipulation with respect to the claimant's right upper extremity, the left knee and the body as a whole. Dr. Levy explained that since he understood these other conditions to have been adjudicated at certain rates, he did not personally rate any of them. Dr. Levy concluded that claimant was permanently and totally disabled from the combination of all of his disabilities with a loading factor.

Claimant did not offer into evidence certified medical records from claimant's prior injuries. Instead he offered Exhibit A, a certified copy of the workers' compensation records for his prior injuries, which included stipulations reflecting settlements for prior injuries to the left knee in July, 1985, the right wrist, elbow and shoulder in March, 1986, the right wrist, the right knee and the body as a whole referable to the back and neck in June, 1986, and the May 3, 1994 Stipulation for Compromise Settlement in Injury # 86–64382 which recited that claimant had preexisting permanent partial disability of 17½% to the right elbow, 12½% of the right shoulder synergistically combining with a disability of 15% of the right wrist and 13% of the man as a whole referable to the low back.

On January 27, 1997 the ALJ issued an award allowing the claim for compensation and denying claimant's Second Injury Fund claim for the May 20, 1994 fall. Claimant filed an Application for Review with the Commission. The Commission issued its Final Award affirming the award and decision of the ALJ.

*Discussion*

■ When a workers' compensation claim is appealed, we review only questions of law. Section 287.495.1 RSMo (Cum. Supp.1998). We can modify, reverse, remand for rehearing, or set aside awards based on factual determinations only on the grounds prescribed by statute; that is,

if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent and substantial evidence to support the award. *Id.; Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995).

■ We review decisions of the Commission, which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *West v. Posten Const. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991); *Harrison v. Harrison Turf Co.*, 908 S.W.2d 159, 161 (Mo.App.1995). Findings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law. *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297 (Mo. 1965). Where the evidentiary facts are not disputed, the Commission's award becomes a question of law. *Id.*

■ Where decisions are based on determinations of fact, we review the whole record in the light most favorable to the decision. *West*, 804 S.W.2d at 744. We defer to the Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence. *Mann v. City of Pacific*, 860 S.W.2d 12, 14 (Mo.App.1993).

■ For his first point claimant asserts that the Commission erred in refusing to consider claimant's evidence of pre-existing permanent partial disability and the combined effect of the pre-existing and current injury for purposes of Second Injury Fund liability. Claimant argues that the percentages of disability contained in the May 3, 1994 settlement were binding on the Commission.

In its findings of fact and conclusions of law denying claimant relief from the Second Injury Fund, the Commission found:

that Dr. Levy's opinion the claimant is permanently and totally disabled be-

cause of all of his alleged physical problems is not probative in that the basis for some of the doctor's ratings was deficient. Dr. Levy did provide, along with his ratings for alleged preexisting injuries to the right wrist, the right elbow, the right shoulder and the back, an opinion that there would be a 10% multiplicity factor. There are, however, no medical records of any preexisting injuries in evidence. It is further found, therefore, that there is insufficient factual and medical evidence to support a compensation award against the Second Injury Fund. *See, generally, Gilley v. Raskas Dairy*, 903 S.W.2d 656 (Mo.App. 1995).

 In order to recover permanent disability compensation from the Second Injury Fund, claimant had the burden to prove that he had a preexisting permanent partial disability of such seriousness as to constitute a hindrance or obstacle to his employment or reemployment. Section 287.220.1 RSMo (1994); *Leutzinger v. Treasurer*, 895 S.W.2d 591, 593 (Mo.App. 1995). The preexisting disability necessary to trigger Second Injury Fund liability is permanent partial disability existing at the time the work-related injury was sustained. Section 287.220.1 RSMo (1994); *Garcia v. St. Louis County*, 916 S.W.2d 263, 266 (Mo.App.1995).

 In order to compute the total disability compensation to which an employee is entitled from the Second Injury Fund, the Commission must determine not only the existence of a preexisting permanent partial disability, but also the degree or percentage of the employee's disability that is attributable solely to the preexisting condition at the time of the last injury. Section 287.220.1 RSMo (1994); *Carlson v. Plant Farm*, 952 S.W.2d 369, 373 (Mo.App. 1997).

At the hearing Dr. Levy offered the only medical opinion on disability for the claimant's alleged preexisting injuries. However, he did not medically evaluate claimant's pre-existing disability but relied on the percentages of disability contained in the compromise settlement.

Section 287.190.6 limits the circumstances under which a percentage of disability is presumed to continue to a subsequent injury and partial permanent disability to the same part of the body:

> The percentage of disability shall be conclusively presumed to continue undiminished whenever a subsequent injury to the same member or same part of the body also results in permanent partial disability for which compensation under this chapter may be due.

Claimant's last injury, which was to his foot, did not involve "the same member or same part of the body" as the other injuries. Accordingly, the percentages of disability contained in the compromise settlement are not presumed to continue undiminished.

Dr. Levy's rating was deficient because it was based on an acceptance of the percentages of disability accorded the preexisting injuries in the settlement agreement; he did not independently evaluate the preexisting injuries by reviewing the applicable medical records or by physical exam. *See Gilley v. Raskas Dairy*, 903 S.W.2d 656, 658 (Mo.App.1995). Accordingly, the Commission was within its powers in concluding that Dr. Levy's opinion was not probative. *Id.* The Commission's finding was supported by competent and substantial evidence and was not against the overwhelming weight of the evidence. Point one is denied.

 For his second point claimant contends that the Commission erred when it failed to award the stipulated underpayment of $4,216.10 in temporary total disability (TTD) and ten percent interest on the underpayment from the time he was underpaid.

At the ALJ hearing the parties stipulated to employee's rate of pay and that employer underpaid TTD in the amount of $4,216.10 as the result of an incorrect rate

of pay. The Commission listed this amount as a stipulated underpayment in line 15 of its award, but omitted to include this amount in its award under "Compensation Payable." Employer does not contest on appeal that it owes this amount to claimant.

However, employer argues that it does not owe interest on this amount under Section 287.160.3 RSMo (Cum.Supp.1998) because it contested the compensation rate and thus the amount of the benefit payments. Section 287.160.3 provides that if the employer or insurer does not contest the claim, ten percent interest is due on all payments made more than thirty days after they are due. However, if solely the employer or insurer contests the claim, "no interest shall be payable until after thirty days after the award of the administrative law judge." *Id.* Employer argues that, even though it stipulated at the hearing that it had underpaid claimant by $4,216.10 TTD benefits, this claim was contested because the parties had a legitimate dispute over the calculation of those benefits which was resolved by employer's agreement to pay them.

The provision that contested past due claims for weekly benefit payments bear interest from no earlier than the ALJ's award was added to Section 287.160 by amendment in 1990. In enacting that amendment the legislature abrogated that part of *Martin v. Mid–America Farm Lines, Inc.*, 769 S.W.2d 105, 112 (Mo. banc 1989) which held that an employee was entitled to interest from the date each individual installment of compensation was due. *See Johnson v. St. John's Mercy Medical Center*, 812 S.W.2d 845, 851–52 (Mo.App.1991). Prior to *Martin*, cases had indicated that, when the amount of compensation due is disputed, the time when payment is "due" for purposes of determining interest is no earlier than the date of the award. *Johnson*, 812 S.W.2d at 852; *see Komosa v. Monsanto Chemical Co.*, 317 S.W.2d 396 (Mo. banc 1958).

In this case, for claimant to recover an award of interest from thirty days after

the weekly benefit installments were due, he should have made a record that the employer did not dispute the claim prior to the date of the stipulation and he should have submitted this issue at the hearing. The record does not reflect that he did either. The record shows only that the parties agreed that there was an underpayment for the unpaid weekly benefits. Once the parties stipulated at the hearing that the $4216.10 was due, it became due under the statute and employer became obligated to pay that amount within thirty days, even though it was not formally required to do so under the "Compensation Payable" section of the award. .

The Commission ordered that its award "shall bear interest as provided by law" which is interest pursuant to Section 287.160.3. *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376–77 (Mo.App.1994). This opinion clarifies what interest is provided by law. As clarified by this opinion, the Commission's award of interest was not erroneous.

The Commission's award is amended to include $4,216.10 in unpaid weekly compensation benefits. The award is affirmed as so modified.

ROBERT G. DOWD, Jr., J. and SHERRI B. SULLIVAN, J., concur.