**Vertie MOTTON, Claimant/Respondent,**

v.

**OUTSOURCE INTERNATIONAL, Employer,**

and

**Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Additional Party/Appellant.**

**No. ED 79862.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 11, 2002.

Robert E. Ballman, St. Louis, MO, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., M. Jennifer Sommers, Assistant Attorney General, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

In this workers' compensation case, the Second Injury Fund appeals from the final award of the Labor and Industrial Relations Commission (Commission) finding Second Injury Fund liability. The Second Injury Fund asserts that the Commission erred in holding section 287.220.1 RSMo (1994) ambiguous and finding claimant's preexisting permanent partial arm injury at the shoulder of 12.5% met the statutory minimum of 15% permanent partial disability for Second Injury Fund liability. We reverse.

Claimant was employed by Tandem St. Louis/Outsource International (employer). On June 17, 1998, while performing her duties on an assembly line, claimant partially lost her balance while climbing down a ladder and injured her left ankle, left foot, and left leg.

On November 16, 1998 claimant filed a workers' compensation claim for the June 17, 1998 injury. Claimant settled that claim against employer for a lump sum in the amount of $5,964.67 based on a disability rating of 22.5% of the body as a whole. Claimant also made a claim for permanent partial disability against the Second Injury Fund, alleging that she had sustained a prior injury to her left arm at the shoulder. At the hearing on Second Injury Fund liability, claimant introduced a Stipulation for Compromise Settlement with Manpower, Inc., from an August 28, 1997 injury, "based upon approximate disability of 12.5% of left arm at shoulder."

On February 9, 2001 the ALJ issued an award granting claimant compensation from the Second Injury Fund. In his rulings of law, the ALJ found section 287.220 ambiguous "when it states '15% permanent partial disability for a major extremity' and does not specify number of weeks of disability." The ALJ continued:

When it refers to major extremity it is unclear as to what level of the major extremity is being referred. In the case of the arm there are five different levels of value referenced under the statute (hand-wrist, forearm, elbow, upper arm, and shoulder) and for the leg there are five different levels of value (foot, ankle, knee[,] upper leg, and hip). Fifteen percent permanent partial disability for each of these arm and leg levels results in a different amount of disability, unlike the definite weeks mentioned for an injury to the body as a whole (50 weeks).

Because he found the statute ambiguous, the ALJ determined that "major extremity" means the arm at the level of the wrist and that "fifteen percent" was 15% of the number of weeks of compensation for the arm at the wrist (175 weeks) or 26.5 weeks of compensation. The ALJ concluded that, because a 12.5% disability to the arm at the shoulder resulted in 34.8 weeks of disability compensation and 34.8 weeks exceeded the 26.5 weeks representing 15% of weeks of permanent partial disability at the level of the wrist, the Second Injury Fund threshold limits were satisfied.

The Second Injury Fund filed an Application for Review with the Commission. The Commission adopted the findings and conclusions of the ALJ, with one member dissenting, and awarded compensation from the Second Injury Fund.

 For its sole point, the Second Injury Fund contends that the Commission erred in finding that claimant's preexisting 12.5% shoulder disability met the

statutory threshold for Second Injury Fund liability. The Second Injury Fund argues that section 287.220.1 requires a minimum finding of 15% permanent partial disability for a preexisting major extremity injury, and claimant's 12.5% permanent partial disability for a preexisting injury to the arm at the shoulder does not meet the statutory minimum.[1]

We review decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *West v. Posten Const. Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991); *Soos v. Mallinckrodt Chemical Co.,* 19 S.W.3d 683, 685 (Mo.App.2000). In workers' compensation cases, we broadly and liberally interpret the law with a view to the public interest and with an understanding that the law is intended to extend its benefits to the largest possible class. *West,* 804 S.W.2d at 746 (quoting *Wolfgeher v. Wagner Cartage Serv., Inc.,* 646 S.W.2d 781, 783 (Mo. banc 1983)). Although a liberal construction of the workers' compensation statute in favor of claimants is required, "this principle may not be extended so far as to destroy what we believe to be a 'clearly indicated' intent of the legislature." *Staples v. A.P. Green Fire Brick Co.,* 307 S.W.2d 457, 463 (Mo. banc 1957); *see also Simpson v. Dale E. Saunchegrow Const.,* 965 S.W.2d 899, 905 (Mo.App.1998). Accordingly, we do not ignore the statute's language to award compensation where the statute does not so provide.

Where one asserts a right under such [worker's compensation] act, he must find his justification therefor in the provisions of such act, based upon the language used, *DeMay v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640; and provisions not therein found plainly written or necessarily implied from what is written will not be imparted or interpolated therein in order that the existence of such right may be made to appear when otherwise, upon the face of said act, it would not appear.

*Allen v. St. Louis–San Francisco Ry. Co.,* 338 Mo. 395, 402, 90 S.W.2d 1050, 1053 (Mo.1935). "We are not at liberty to write into the Act 'under the guise of construction, provisions which the legislature did not see fit to insert.'" *Simpson,* 965 S.W.2d at 905 (quoting *State ex rel. Mills v. Allen,* 344 Mo. 743, 755, 128 S.W.2d 1040, 1046 (Mo. banc 1939)).

Section 287.220 directs when compensation is to be paid from the Second Injury Fund as well as the amounts to be paid from the fund in "[a]ll cases of permanent disability where there has been previous disability." *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 847 (Mo.App.2000); section 287.220.1. " 'Permanent partial disability' means a disability that is permanent in nature and partial in degree." Section 287.190.6. The portion of section 287.220 that is the subject of this appeal provides:

If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the *preexisting permanent partial disability,* if a body as a whole injury, equals a minimum of fifty weeks of compensation or, *if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation,* re-

---

1. The record does not indicate that any challenge was made to the 12.5% disability on the grounds that the only evidence of the disability was the settlement document. *See Tidwell v. Kloster Co.,* 8 S.W.3d 585, 589 (Mo.App. 1999).

ceives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.

287.220.1 (emphasis added).

█ In order to recover permanent disability compensation from the Second Injury Fund, claimant had the burden to prove that she had a preexisting permanent partial disability of such seriousness as to constitute a hindrance or obstacle to her employment. Section 287.220.1; *Tidwell v. Kloster Co.*, 8 S.W.3d 585, 589 (Mo.App. 1999). The preexisting disability necessary to trigger Second Injury Fund liability is a permanent partial disability that existed at the time the work-related injury was sustained. Section 287.220.1; *Tidwell,* 8 S.W.3d at 589.

In addition, for injuries resulting in permanent partial disability, a claimant must show that the "preexisting permanent partial disability ... if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation." Section 287.220.1; *Leutzinger v. Treasurer of Missouri,* 895 S.W.2d 591, 593 (Mo.App. 1995). The addition of the fifteen percent

threshold to the statute in 1993 was a substantive change. *Smart v. Missouri State Treasurer,* 916 S.W.2d 367, 371 (Mo. App.1996); *Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 60 (Mo.App.1996); *Fletcher v. Second Injury Fund,* 922 S.W.2d 402, 408 (Mo.App.1996).

The question is whether the phrase "fifteen percent of a major extremity, according to the medical standards that are used in determining such compensation" is ambiguous. Claimant responds that the phrase is ambiguous because it does not specify any levels for "major extremity" and because it does not define permanent partial disability in terms of weeks of compensation.

█ We interpret the workers' compensation law according to the general rules of statutory construction. *Frazier v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 869 S.W.2d 152, 156 (Mo.App.1993). We will not create an ambiguity in a statute, where none exists, in order to depart from a statute's plain and ordinary meaning. *Premium Standard Farms, Inc. v. Lincoln Tp. of Putnam County,* 946 S.W.2d 234, 239 (Mo. banc 1997). Our primary goal is to ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms used. *Frazier,* 869 S.W.2d at 156. In determining legislative intent, we give an undefined word used in a statute its plain and ordinary meaning. *Hoffman v. Van Pak Corp.,* 16 S.W.3d 684 (Mo.App. 2000). Under traditional rules of construction, the word's dictionary definition supplies its plain and ordinary meaning. *Id.*

The parties agree on the definition of "extremity" found in Dorland's Illustrated Medical Dictionary 638 (29th ed.): "1. extremitas, 2. an upper or lower limb; see membrum., 3. a hand or foot." "Membrum" is defined as "a member or a limb." *Id.* at 1082. Specifically, a "membrum su-

perius" is defined as an "upper limb: the limb of the body extending from the deltoid region to the hand; see also arm." *Id.* "Major" is defined as "greater in number, extent, or importance." Webster's New International Dictionary 1484 (2nd ed.). A "major extremity" is not ambiguous on its face and clearly includes an arm. An injury to the arm at the shoulder is an injury to a major extremity.[2]

The term "major extremity" is not ambiguous because it does not specify a percentage of disability for the particular levels of body parts. The legislature was familiar with the use of levels of body parts in its schedule of compensation. Its decision not to use those levels in establishing a minimum threshold of disability indicates that it intended not to do so. *See Frazier,* 869 S.W.2d at 156.

Likewise, the use of a percentage of disability rather than "weeks" of disability indicates a legislative choice, not an ambiguity. We have held that the 1993 change to section 287.220.1 establishes a more objective standard by which Second Injury Fund liability is to be determined. *Culp v. Lohr Distributing Co.,* 898 S.W.2d 613, 614 (Mo.App.1995). "The preexisting disability must be of sufficient seriousness as to hinder employment plus, in the case of additional permanent partial disability, be of sufficient significance as to be susceptible of measurable rating at least equal to the minimums set forth in the statute." *Id.* Section 287.220.1 includes two different forms of measurable rating: fifty "weeks" for an injury to the body as a whole and 15% for a major extremity injury. Both forms of rating are commonly used in workers' compensation proceedings.

In workers' compensation practice, the extent of partial disability is rated by a percent of disability to a body part or to the body as a whole. The determination of the specific amount or percentage of disability is a finding of fact within the special province of the Commission, which is not strictly limited to the percentages of disability provided by the medical expert. *Banner Iron Works v. Mordis,* 663 S.W.2d 770, 773 (Mo.App. 1983). However, expert opinion evidence is required to prove the extent of the preexisting disability. *Messex v. Sachs Elec. Co.,* 989 S.W.2d 206, 215 (Mo.App. 1999). In addition, for permanent disability the workers' compensation statute assigns a number of "weeks" of compensation for the total loss of different body parts. Section 287.190.1–3.

The percent of disability and the number of "weeks" of compensation are both used to calculate compensation for permanent partial disability. To make this computation, the number of "weeks" of compensation which may be paid for the total loss of a particular body part must be determined as set out in section 287.190.1–3. B. MICHAEL KORTE, 29 MISSOURI PRACTICE, WORKERS' COMPENSATION LAW AND PRACTICE, section 5.12 (1997). The Commission must also determine the degree or amount of permanent partial disability expressed as a percentage figure. *Id.* These numbers are multiplied to arrive at the amount of permanent partial disability and then the monetary benefit is calculated. *Id.*

In setting the threshold for Second Injury Fund liability, the legislature chose to define disability for the body as a whole in terms of "weeks," but for a major extremity in terms of a percentage. Had the legislature intended to set the threshold

---

**2.** *See also* B. MICHAEL KORTE, 29 MISSOURI PRACTICE, WORKERS' COMPENSATION LAW AND PRACTICE, section 6.2 (1997).

for disability for a major extremity on a minimum number of "weeks", rather than a minimum percent of disability, it could have done so as it did when it set the threshold for disability of the body as a whole. *See Frazier,* 869 S.W.2d at 156. Rather, the legislature premised liability on a percentage of disability. The legislature's decision not to measure disability to a major extremity by weeks of compensation indicates that it did not intend to do so. *Id.* at 156–57.[3]

In addition, the use of the phrase "according to medical standards that are used in determining such compensation" indicates that the legislature meant to refer to disability as established by medical standards, which is expressed in terms of a percentage. The American Medical Association has, since 1958, used medical impairment ratings, expressed in terms of percentages, to measure disability. Proving Medical Diagnosis and Prognosis, section 2000.06 (Houts and Marmor eds.) (1998). The International Association of Industrial Accident Boards and Commissions has formulated a standard permanent partial disability schedule expressed in terms of percentages. Attorney's Textbook of Medicine, section 181.01 (Gray and Gordy eds.) (2000).

The use of the terms "major extremity" and "medical standards" with a percentage of disability is consistent. It indicates that the legislature intended to make a simple 15% disability to a major extremity the threshold rather than attempt a more complex formula based on weeks of disability to various body parts at various levels.

The use of the disability percentage rather than the weeks standard does not make the statute ambiguous. The legislature's intent was to impose liability on the Second Injury Fund for permanent partial disability when a claimant has a preexisting permanent disability of 15% to a major extremity. The Commission erred as a matter of law in finding that the reference to "fifteen percent permanent partial disability" of a major extremity, as used in section 287.220.1, was ambiguous and in finding that a 12.5% disability to the arm at the shoulder satisfied the 15% requirement.

The Commission's final award granting compensation is reversed.

WILLIAM H. CRANDALL, JR., P.J., and ROBERT G. DOWD, JR., J. concur.

---

3. The 1993 amendments to section 287.220 have been described as an attempt to codify the theory behind the Second Injury Fund's guidelines used for settlements before the 1993 amendments, under which ten percent of a major extremity was a threshold. I Mo. Workers' Compensation Law, section 3.5 (Mo-Bar 2d ed. 1994).