**Juanita SHIPP, Appellant/Cross–
Respondent,**

v.

**TREASURER OF the STATE of Missouri as Custodian of the Second Injury Fund, Respondent/Cross–Appellant.**

**No. ED 81274.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 18, 2003.

Susan K. Roach, Law Office of Susan K. Roach, Chesterfield, MO, for appellant/cross-respondent.

Jeremiah W. (Jay) Nixon, Attorney General, M. Jennifer Sommers, Jill L. Selsor, Plia D. Cohn, St. Louis, MO, for respondent/cross-appellant.

GARY M. GAERTNER, SR., Judge.

Appellant, Juanita Shipp ("claimant"), appeals from the unanimous final award of the Labor and Industrial Relations Commission ("commission"), modifying the decision of the Administrative Law Judge ("ALJ"), finding that respondent, the Second Injury Fund ("SIF") was liable to claimant for sixty weeks of permanent partial disability for a total award of $17,683.80. The SIF cross-appeals the commission's award of additional permanent partial disability due to a combination of claimant's preexisting and primary injuries. We affirm.

Claimant filed a claim for compensation that alleged she suffered an injury to her left shoulder, left arm, left side, and left hand while working at Hazelwood Farms Bakery, Inc. ("employer") on August 13, 1998. Additionally, claimant filed a claim against the SIF alleging previous injuries to her back, right wrist, ribs, and chest. Claimant also alleged problems with hypertension and "present psychological psychiatric depression." Employer and its insurer settled their risk of liability with claimant for $17,500. The settlement was based upon fifteen percent permanent partial disability ("PPD") of claimant's left shoulder and six percent PPD of claimant's right elbow. However, a hearing was held by the ALJ on the single issue of the liability of the SIF.

At the hearing, claimant, who was forty-four years old at the time with an eighth-grade education, testified that she began working for employer in 1994 as a "miscellaneous worker." Claimant performed various duties on employer's assembly line. On August 13, 1998, claimant sustained an

injury while she was scooping apples with a shovel out of one barrel and loading them into another barrel. Claimant, who is left-hand dominant, "felt something hot" and then heard a "pop" and her left shoulder began to hurt.

According to medical records and claimant's testimony, she saw a number of doctors in the days immediately following August 13, 1998. Claimant complained of left shoulder pain and right elbow pain. Claimant's private doctor, Dr. David Kantor, diagnosed left shoulder rotator cuff strain and right tennis elbow due to claimant's work injury of August 13, 1998. Dr. Kantor gave claimant a release from work and claimant began physical therapy. After approximately two months of physical therapy, claimant again saw Dr. Kantor who again diagnosed right tennis elbow and left rotator cuff strain, but he indicated claimant could return to work. However, claimant never actually returned to work because she was terminated for absenteeism.

At the time claimant was undergoing treatment for her injuries she was also under the care of a psychiatrist. Claimant had seen a psychiatrist since 1994 or 1995 for the treatment of major depression with psychotic features. Claimant claimed to hear voices and see "little bugs or little insects crawling on the television." Also, claimant testified she takes medication for her psychiatric problems. Records from the Mental Health Group were admitted into evidence.

In addition to her previous mental problems, claimant testified that she had suffered numerous previous physical problems. Prior to August 1998, claimant had been treated for back problems, hypertension, chest wall pain, and side pain. Additionally, claimant testified she had right wrist carpal tunnel syndrome and had undergone therapy and treatment prior to

August of 1998. Also, claimant testified she had sustained an injury to her right elbow prior to August of 1998.

In addition to the medical records and claimant's testimony, three depositions were admitted into evidence. The depositions of Dr. Raymond Cohen, a board-certified neurologist, and Timothy Lalk, a vocational rehabilitation counselor, were submitted on behalf of claimant. The deposition of Dr. Sandra Tate was submitted on the behalf of the SIF.

Dr. Cohen saw claimant twice during the course of 2000 and reviewed "voluminous records" regarding the health of claimant. Dr. Cohen opined that claimant had a twenty-five percent PPD at the left shoulder and a twenty percent PPD at the left elbow. In regard to claimant's injuries which preexisted August of 1998, Dr. Cohen opined that claimant had a twenty-five percent PPD of the whole person due to depression, a twenty percent PPD of the whole person due to hypertension, a fifteen percent PPD of the whole person due to left chest wall syndrome, a twenty percent PPD at the right elbow, and a thirty percent PPD at the right wrist. Dr. Cohen concluded that claimant's "preexisting conditions or disabilities combine[d] with the primary work-related injury to create a greater overall disability than their simple sum and that [the] preexisting conditions or disabilities combine with the primary work-related injury to render [claimant] permanently and totally disabled and not capable of gainful employment in today's open labor market."

Lalk, who evaluated claimant after meeting with her in 1999 and reviewing her medical records, opined that claimant was not employable in the open labor market due to her physical and psychological disabilities and her limited education. However, Lalk, in his vocational rehabilitation evaluation report, indicated there

were conflicting reports among the medical records he reviewed. Lalk conceded that, if in fact claimant had limitations only on her right non-dominant upper extremity (which was in accordance with some of the medical records), then claimant's employment opportunities would be limited but "she might have success in looking for jobs such as office cleaner/housekeeper."

Dr. Tate, who examined claimant three times between November of 1998 and January of 2000, opined that claimant had reached maximum medical improvement and that claimant should be able to return to work without restrictions. The last time Dr. Tate examined claimant she found that claimant had continued left shoulder complaints with no objective findings, and there was also symptom magnification upon physical examination of claimant. Also, claimant's previous right lateral epicondylitis (tennis elbow) had resolved and claimant reported only left upper extremity problems. Dr. Tate, upon her final examination, found no objective evidence of injury.

Claimant was found to not be permanently and totally disabled. However, the ALJ found claimant "sustained a fifteen percent PPD of the left shoulder and five percent PPD of the right wrist as a result of the primary injury." The ALJ also found claimant had "pre-existing PPD of the right wrist and right elbow which [were] found to constitute fifteen percent PPD of the right upper extremity at the level of the shoulder." The ALJ further found that the record "supports a finding of twenty to twenty-five percent pre-existing PPD referable to depression." With regards to all other preexisting injuries and disabilities alleged by claimant, the ALJ found that she failed to prove the "PPD threshold element" which would trigger potential SIF liability.

In determining the liability of the SIF, the ALJ, under the heading "Pre–Existing PPD of the Right Arm," found that the fifteen percent PPD of the right upper extremity at the level of the shoulder combined with the primary injury to the left arm to equate to an increased overall PPD of ten percent of the body (forty weeks).

In determining the liability of the SIF, the ALJ, under the heading "Pre–Existing PPD for Depression," found that "[c]laimant's overall disability is not made worse by the depression, however serious, due to a combination with the primary injury; the two disabilities merely co-exist." Therefore, the ALJ found no increased overall PPD because claimant had not shown the synergistic (or combination) effect of the depression with the primary injury.

The ALJ awarded claimant forty weeks of compensation from the SIF for a total award of $11,789.20.

The commission agreed claimant was not permanently and totally disabled. The commission also found the ALJ was correct in finding fifteen percent PPD of the right upper extremity at the level of the shoulder combined with the primary injury to equate to an increased overall PPD of the body. However, the commission noted that "[t]echnically this may have been better phrased as [fifteen percent] of the arm or upper extremity [instead of fifteen percent PPD of the right upper extremity at the level of the shoulder], but we believe that just as where there are injuries to multiple parts of the body it may be appropriate to 'rate' on the body as a whole [citation omitted] where there are injuries to different parts of an arm, it may often be appropriate to consider the disability of the entire arm." The commission found it was not significant that the ALJ referred to the proportionate loss of use of the right shoulder instead of the proportionate loss of use of the right arm.

In modifying the ALJ's award, the commission found that claimant sustained disability for depression in combination with the other injuries equivalent to five percent of the body as a whole or twenty weeks. The commission stated that "[b]ased upon [claimant's] description of her problems, the medical records and Dr. Cohen's testimony we find it credible that depression, as significant as [claimant's], could exacerbate the impact of the physical injuries to create greater disability than the simple sum. Conversely, the physical injuries may easily exacerbate the depression."

Therefore, the commission modified the award of the ALJ to sixty weeks of PPD from the SIF for a total award of $17,683.80. Despite the modification, the commission attached and incorporated the decision of the ALJ to the extent it was not inconsistent. Claimant appeals and the SIF cross-appeals the commission's award.

■ On appeal we may modify, reverse, remand for rehearing, or set aside an award or decision of the commission only if the commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the commission, or unsupported by competent evidence on the whole record. Section 287.495.1, RSMo 2000;[1] *Cartee v. Sheraton Westport Inn*, 34 S.W.3d 216, 217 (Mo.App. E.D.2000). Evidence and all inferences drawn therefrom are viewed in the light most favorable to the decision of the commission. *McGrath v. Satellite Sprinkler Systems*, 877 S.W.2d 704, 708 (Mo.App. E.D.1994).

■ This court reviews decisions of the commission, which are clearly interpretations or applications of law, for correctness without deference to the commission's judgment. *Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142, 145 (Mo.App. E.D.1997). The commission's finding of ultimate facts through the application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law. *Id.* The commission's award becomes a question of law, where the evidentiary facts are not disputed. *Id*

■ Where decisions are based on determinations of fact, this court reviews the whole record in the light most favorable to the decision. *Id.* This court defers to the commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. *Id.* In the absence of fraud, the factual findings made by the commission within its powers are conclusive and binding on this court. *Wiele*, 948 S.W.2d at 145. When the commission affirms or adopts the findings of the ALJ, this court reviews the decision and findings of the ALJ as adopted by the commission. *Id.*

■ In her first point on appeal, claimant argues the commission erred in failing to find that she was permanently and totally disabled as a result of a combination of her preexisting disabilities and the primary injury sustained on August 13, 1998. Specifically, claimant alleges the commission misinterpreted the findings and conclusions of Dr. Cohen and Lalk and incorrectly overlooked the fact that claimant had established that her preexisting injuries were substantial and in combination with her primary injury thereby creating a hindrance and obstacle to re-employment. We disagree.

■ Under section 287.020.7, "total disability" is defined as the inability to return to any employment and not merely the inability to return to the employment

**1.** All statutory references are to RSMo 2000, unless otherwise noted.

in which the employee was engaged at the time of the accident. *See Fletcher v. Second Injury Fund,* 922 S.W.2d 402, 404 (Mo.App. W.D.1996). The test for permanent and total disability is whether a claimant is able to competently compete in the open labor market given his or her condition and situation. *Messex v. Sachs Elec. Co.,* 989 S.W.2d 206, 210 (Mo.App. E.D.1999). The pivotal question is whether an employer can reasonably be expected to hire the claimant, given the claimant's present physical condition, and reasonably expect the claimant to successfully perform the work. *Id.* Therefore, this court's inquiry into whether claimant is permanently and totally disabled is a factual one; thus we will not substitute our judgment on issues of fact where the commission was within its powers. *Id.*

The commission agreed with, and subsequently adopted, the ALJ's finding that claimant was not permanently and totally disabled. Lalk, in his vocational rehabilitation evaluation report indicated there were conflicting reports among the medical records he reviewed. Lalk, in his vocational rehabilitation evaluation report, conceded that, if in fact claimant had limitations only on her right non-dominant upper extremity (which was in accordance with some of the medical records), then claimant's employment opportunities would be limited but "she might have success in looking for jobs such as office cleaner/housekeeper." Lalk's opinion supports the finding claimant was not totally disabled because she did not have the inability to return to any employment.

Furthermore, Dr. Cohen's testimony conflicted with the testimony of Dr. Tate. Dr. Tate opined that claimant had reached maximum medical improvement and that claimant should be able to return to work without restrictions; whereas Dr. Cohen, opined that claimant was permanently and

totally disabled and not capable of gainful employment in today's open labor market. We defer to the commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. The commission obviously agreed more with Dr. Tate on the issue of whether claimant was permanently and totally disabled. Point denied.

In her second point on appeal, claimant again argues that the commission erred in not finding her to be permanently and totally disabled. However, in her second point claimant argues that it was clear that her preexisting psychiatric depression was a significant disabling factor that clearly combined with her primary injury and other preexisting disabilities to render her permanently and totally disabled.

Although claimant attempts to distinguish her second point from her first point, the test for total disability remains the same. There was conflicting expert evidence regarding claimant's ability to competently compete in the open labor market given her condition and situation. As discussed above, we defer to the commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. Therefore, we find, based on our review of the whole record, the commission did not err in finding claimant to not be permanently and totally disabled. Point denied.

■ We will now address the SIF"s cross-appeal. In its first point on appeal, the SIF argues the commission erred in finding claimant's preexisting injuries could be "stacked" on top of each other to sustain a compensable threshold level of disability. Specifically, the SIF contends the commission could not combine or "stack" claimant's preexisting injuries to her right elbow and right wrist in order to meet the required fifteen percent PPD of a

major extremity, which triggers potential SIF liability.

A claimant has the burden to prove that he or she had a preexisting PPD of such seriousness as to constitute a hindrance or obstacle to employment in order to recover permanent disability compensation from the SIF. Section 287.220.1; *Motton v. Outsource Intern.*, 77 S.W.3d 669, 673 (Mo.App. E.D.2002). The preexisting disability necessary to trigger potential SIF liability is a PPD that existed at the time the work-related injury was sustained. *Id.* Additionally, for injuries resulting in permanent partial disability, the claimant must show that the "preexisting permanent partial disability ... if a *major extremity injury only, equals a minimum of fifteen percent permanent partial disability*, according to the medical standards that are used in determining such compensation." *Motton*, 77 S.W.3d at 673 (quoting section 287.220.1).

The SIF cites *Motton v. Outsource Intern.*, 77 S.W.3d 669 (Mo.App. E.D.2002), in support of its argument that section 287.220.1 does not permit "stacking" preexisting disabilities in order to reach the minimum fifteen percent PPD threshold for triggering potential liability of the SIF. We disagree with the SIF's characterization of *Motton*.

In *Motton*, the claimant made a claim against the SIF alleging a prior injury to her left arm at the shoulder. *Motton*, 77 S.W.3d at 671. The claimant, at the hearing, introduced a stipulation for compromise settlement with a former employer as evidence of a preexisting disability of 12.5% of the left shoulder. *Id.* The ALJ issued an award which granted the claimant compensation from the SIF. *Id.* The ALJ found that section 287.220 was ambiguous "when it states '15% permanent partial disability for a major extremity' and does not specify number of weeks disabili-

ty." *Id.* The ALJ determined that "major extremity" means the arm at the level of the wrist and that fifteen percent was fifteen percent of the number of weeks of compensation for the arm at the wrist level (175 weeks) or 26.5 weeks of compensation. *Motton*, 77 S.W.3d at 671. The ALJ then concluded that because 12.5% disability to the arm at the shoulder resulted in 34.8 weeks of disability compensation, which exceeded the 26.5 weeks, the SIF threshold limits were satisfied. *Id.* The commission adopted the ALJ's findings and the SIF appealed to this court. *Id.*

On appeal, the SIF argued that section 287.220.1 required a minimum finding of fifteen percent PPD for a preexisting major extremity injury and the claimant's 12.5% PPD for a preexisting injury to the arm at the shoulder did not meet the statutory minimum. *Id.* at 672. This court agreed and reversed the award of the commission. *Id.* at 675. We found that the legislature's intent was to impose liability on the SIF for PPD when a claimant has a preexisting disability of fifteen percent to a major extremity assuming all other statutory requirements are met. *Motton*, 77 S.W.3d at 675. The commission erred in finding that the reference to fifteen percent PPD of a major extremity, as used in section 287.220.1, was ambiguous and in having found that a 12.5% disability to the arm at the shoulder satisfied the fifteen percent requirement. *Id.* This court also stated "[a] 'major extremity' is not ambiguous and clearly includes an arm." *Id.*

*Motton* does not stand for the argument that section 287.220 does not permit "stacking" of preexisting claims. In *Motton*, the commission did not "stack" the preexisting injuries of the claimant; rather, the commission wrongly found section 287.220.1 to be ambiguous and converted a percentage of PPD to a major extremity below the minimum threshold into weeks

of compensation in order to satisfy threshold limits. *Id.* In this case there was no such conversion. Instead, the commission weighed the medical testimony and adopted the ALJ's finding that claimant suffered a fifteen percent PPD to the right upper extremity. The commission pointed out that technically the ALJ should have referred to the fifteen percent PPD of the "arm or upper extremity" instead of "the right upper extremity at the level of the shoulder." The commission found the fact that the ALJ referred to the right shoulder rather than the right arm to be insignificant. It should be noted that in the ALJ's rulings of law, which were adopted by the commission, claimant's preexisting injuries were discussed under the heading "Pre–Existing PPD of the *Right Arm*" (emphasis added).

The SIF fails to cite to any case law which specifically prohibits "stacking" of preexisting injuries at various levels. In this case, there was a major extremity injury to claimant. In *Motton,* the court found that "major extremity" clearly included an arm and that an injury to the arm *at the shoulder* was an injury to a major extremity. *Id.* at 674. (emphasis added). We find that an injury to the arm at the wrist and at the elbow are also injuries to a major extremity. If a claimant has multiple injuries to a major extremity at various levels, it may be appropriate, depending on the facts and circumstances, to rate the percentage of disability to the entire major extremity. Given the nature and severity of claimant's injuries to her right upper extremity at various levels, we find no error in the commission's determination to find the statutory threshold satisfied.

Furthermore, *Motton* is distinguishable because the claimant did not have multiple preexisting injuries to a major extremity.

The claimant in *Motton* had a 12.5% disability of the left shoulder which was solely evidenced by the stipulation for compromise settlement. *Motton,* 77 S.W.3d at 671. In this case, claimant had multiple injuries to a major extremity evidenced most prominently by 1) the testimony of Dr. Cohen, who opined that claimant had twenty percent PPD of the right elbow and thirty percent PPD of the right wrist; and 2) the medical records. The commission relied on this evidence to conclude that claimant had a fifteen percent disability of the right upper extremity. The evidence was sufficient to find that claimant had a fifteen percent PPD to a major extremity thus meeting the statutory threshold. Therefore, we find no error in the findings of the commission regarding claimant's preexisting injuries to her right upper extremity. Point denied.

In its second point of its cross-appeal, the SIF argues that the commission erred in finding that claimant's preexisting depression combined synergistically with the PPD to her left shoulder. The SIF argues the evidence does not support such a finding. Furthermore, the SIF argues that there was no express finding by the commission that claimant's disability met the statutory threshold of fifty weeks of compensation to the body as a whole as required by section 287.220.1. We disagree.

The extent of partial disability is rated by a percent of disability to a body part or to the body as a whole. *Motton,* 77 S.W.3d at 674. The determination of the specific percentage of disability is a finding of fact within the special province of the commission, which is not strictly limited to the percentages of disability provided by the medical expert. *Id.* Expert opinion evidence is required to prove the extent of the preexisting disability. *Id.* However, a medical expert's opinion must be sup-

ported by facts proven by competent and substantial evidence. *Silman v. William Montgomery & Associates*, 891 S.W.2d 173, 176 (Mo.App. E.D.1995).

Dr. Cohen, a board-certified neurologist, specifically testified that claimant had a twenty-five percent PPD of the whole person due to depression. Dr. Cohen concluded that claimant's preexisting depression combined with the primary work-related injury to render her disabled and the depression was a hindrance or obstacle to her employment. Dr. Cohen opined that claimant needed to be limited from any type of high stress occupation. Dr. Cohen's testimony was sufficient to prove the extent of claimant's preexisting depression. The substantial evidence of claimant's testimony, Lalk's report and testimony and the medical records supported the opinion testimony of Dr. Cohen.

However, in order to be a compensable injury that triggers potential SIF liability, the preexisting disability must *equal a minimum of fifty weeks, or 12.5%,* PPD if it is a disability to the *body as a whole.* Section 287.220.1. (emphasis added). In this case, the commission concluded that claimant sustained a disability for depression in combination with the other injuries equivalent to five percent of the body as whole or twenty weeks. The SIF contends it is not liable for the twenty weeks of compensation because no percentage of disability was assigned by the commission to the preexisting disability of the body as a whole in order to meet the statutory threshold. However, the ALJ found that the record supports a finding of twenty to twenty-five percent preexisting PPD for depression. The commission "attached and incorporated" the decision of the ALJ. If the commission issues a separate opinion, but also attaches and incorporates the ALJ's award and decision; we,

consider the findings and conclusions of the commission as including the ALJ's award. *See Booth v. Trailiner Corp.*, 21 S.W.3d 869, 871 (Mo.App. S.D.2000). At the very least, the ALJ found claimant had a PPD of twenty percent for depression. This is greater than the minimum of fifty weeks, or 12.5%, PPD if it is a disability to the body as a whole required to meet statutory threshold of Section 287.220.1. Thus, the statutory threshold was met and the commission did not err in finding the SIF liable for PPD of five percent of the body as a whole or twenty weeks. Point denied.

Based on the foregoing, we affirm the award of the commission.

PAUL J. SIMON, P.J. and
KATHIANNE KNAUP CRANE, J.,
concur.