Dave McNEILL, Appellant,

v.

CITY OF KANSAS CITY, Missouri, Respondent.

No. WD 74364.

Missouri Court of Appeals, Western District.

Aug. 7, 2012.

Michael P. Healy, for Appellant.

Jesse Sendejas, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

David McNeill appeals from an order issued by the Circuit Court of Jackson County granting a new trial in an action McNeill filed against the City of Kansas City for the wrongful demolition of a building he owned. For the following reasons, the trial court's ruling is affirmed.

In the summer of 2008, McNeill purchased property containing a building located at 3519–25 Paseo Boulevard in Kansas City, Missouri. At the time of his purchase, the building was on the City's dangerous buildings list and had been since August 24, 2001. McNeill notified the City of his plans to renovate the building as a multi-tenant residential property and made sure that all outstanding taxes and fees had been paid. He then began renovations, obtaining architectural plans, gutting the building, removing the old roof, re-decking the roof, and reframing the building. He also demolished the brick and concrete patio that had collapsed at the property. After McNeill's bank backed out of a construction loan, however, work on the building stalled as McNeill sought alternative financing.

In June 2009, the City sent a letter to McNeill instructing him to remove some debris that was sitting on the property along with some weeds that had begun to grow there. The letter also requested a meeting with McNeill. McNeill notified the City that the lawn would be mowed and the weeds pulled.

On June 24, 2009, McNeill met with City Inspector Orville Smith and Codes Enforcement Supervisor John Parks. Parks was filling in for Codes Enforcement Supervisor Susan Crider, who was the Codes Enforcement Supervisor regularly assigned to that file. McNeill explained his plans and his financing difficulties to Smith and Parks. He informed Smith and Parks that his brothers had recently agreed to cosign loan papers with him and that he believed he would be able to obtain financing in the near future. Smith and Parks told McNeill that he would have more time to get financing and fix up the building. They also directed him to remove a pile of debris from the demolition of the patio that was piled up on the side of the building. In July 2009, McNeill hired a contractor who removed the debris and graded the yard. McNeill notified Smith and Parks when that work was completed on July 20, 2009. On July 31, 2009, McNeill received a preliminary commitment for a construction loan and began notifying his subcontractors that work on the building would be resuming soon.

On August 8, 2009, the City demolished the building without having any further contact with McNeill, disregarding the policy of the Dangerous Buildings Division to send the property owner a pre-demolition notice. Crider had recommended demolition of the property to the program manager based upon the records in the file, which did not contain the June 24 notes of Smith and Parks, which had inexplicably disappeared. In addition, neither Smith nor Parks had noted McNeill's July 20 phone call in the file or ever verbally mentioned their June 24 promise of additional

time to Crider. The City subsequently sent McNeill a bill for the demolition costs.

On August 7, 2010, McNeill filed a petition in the Circuit Court of Jackson County claiming that the City had wrongfully demolished his building.[1] The City filed a counterclaim seeking costs, interest, and fees associated with the demolition of the building.

After a four-day jury trial, the jury returned a verdict in favor of McNeill on his wrongful demolition claim for $150,000 and awarded no damages on the City's counterclaim. The trial court entered judgment in accordance with the verdict.

Subsequently, the City filed a Motion for Judgment Notwithstanding the Verdict or for New Trial.[2] In relevant part, the City claimed that the trial court had erroneously submitted, over the City's objection, an instruction containing a roving commission. After hearing argument, the trial court agreed with the City and entered its order granting a new trial based upon instructional error. McNeill challenges that decision on appeal.

■■■ Ordinarily, we review a trial court's ruling on a motion for new trial for abuse of discretion. *Lindquist v. Scott Radiological Group, Inc.*, 168 S.W.3d 635, 643 (Mo.App. E.D.2005). However, "[a] trial court order granting a new trial on grounds of instructional error involves a question of law, and accordingly, we must examine the record presented to determine whether the challenged instructions were erroneous and, if so, whether such instructions prejudiced the complaining party." *Id.* at 644.

"[S]ection 67.450 authorizes a cause of action against the city in the case of wrongful demolition." *City of Kansas City v. Jordan*, 174 S.W.3d 25, 34 (Mo.App. W.D.2005). That section provides that "[i]n the event any building or structure is wrongfully demolished by a city ... or is demolished without adhering to the procedures provided in sections 67.400 to 67.450, the city ... shall be liable for damages as determined by a court of law in a suit brought by the party so damaged." *§ 67.450*. Because there is no Missouri Approved Instruction for this cause of action, Rule 70.02(b) requires that the instruction given must " 'be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.' " *In re Ginnery*, 295 S.W.3d 871, 873 (Mo.App. S.D.2009).

The verdict directing instruction submitted in this case stated:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant wrongfully demolished the building owned by plaintiff which was mentioned in the evidence, and
>
> Second, as a direct result plaintiff was damaged.

The trial court granted a new trial based upon its determination that this instruction was too general and constituted a roving commission for the jury.

■■■ "Prejudicial and reversible error occurs when an instruction is proffered to a jury that gives the jury a roving commission." *Hepler v. Caruthersville Supermarket Co.*, 102 S.W.3d 564, 568 (Mo.App. S.D.2003). A "roving commission" is "an abstract instruction ... in such broad language as to permit the jury to find a verdict without being limited to any issues of fact or law developed in the case." *Edgerton v. Morrison*, 280 S.W.3d 62, 66

---

1. McNeill asserted other assorted claims but those claims were eventually abandoned or dismissed.

2. The City alternatively sought remittitur or an amended judgment.

(Mo. banc 2009). "A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic to impose liability." *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010) (internal quotation omitted).

"Where an instruction submits a question to the jury in a broad, abstract way without being limited to any issues of fact or law developed in the case, it may be considered a 'roving commission'" *Lashmet v. McQueary*, 954 S.W.2d 546, 550 (Mo.App. S.D.1997). "To avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable." *Rinehart v. Shelter General Ins. Co.*, 261 S.W.3d 583, 594 (Mo.App. W.D.2008). "[I]f an instruction fails to advise the jury what acts or omissions of the party, if any, found by it from the evidence would constitute liability, the instruction is a roving commission." *Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97, 109 (Mo.App. W.D.2006).

The verdict directing instruction submitted to the jury in this case could not be more general and fails to identify what acts or omissions on the part of the City might be considered to have rendered the demolition of the building wrongful. Accordingly, the trial court properly concluded that the instruction given in this case afforded the jury a roving commission.

In his first point on appeal, McNeill mistakenly assumes that the trial court's ruling was based upon a conclusion that the phrase "wrongfully demolished" required a separate definition to explain that "term of art" to the jury.[3] He argues that a person of average intelligence can understand the meaning of the term "wrongful." As noted *supra*, the instruction was found to be a roving commission based upon its failure to advise the jury what conduct on the part of the City could have rendered the demolition wrongful. Since this point is based upon a misunderstanding of the trial court's ruling, it has no merit.

Nevertheless, since the case is to be tried again, for the sake of judicial economy, we briefly address the issue underlying Appellant's argument in this point. As noted *supra*, § 67.450 provides, in pertinent part, that "[i]n the event any building or structure is wrongfully demolished by a city, ... the city ... shall be liable for damages as determined by a court of law

---

**3.** In its responsive brief, the City asks this Court to dismiss McNeill's appeal because his points relied on challenge the trial court's ruling that the instruction was a roving commission and did not specifically mention the grant of new trial. The City contends that McNeill, therefore, failed to comply with the requirement of Rule 84.04(d)(1) that the point relied on identify the ruling of the trial court being challenged. Despite this technical deficiency in the points relied on, it is abundantly clear in the brief which ruling of the trial court is being challenged. The brief is certainly not "so deficient [as] to require this Court to become an advocate for [the appellant], which is generally the basis for an appellate court's dismissal of an appeal." *In re*
*Adoption of C.M.B.R.*, 332 S.W.3d 793, 822 (Mo. banc 2011). "Cases should be heard on the merits if possible, construing the court rules liberally to allow an appeal to proceed. While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations." *Id.* We exercise such discretion here.

The City also claims the appeal should be dismissed because McNeill included a section in his brief entitled "Procedural Background" because no such section is authorized by the rules. That section of the brief was clearly just meant as a subdivision of McNeill's factual statement, and its inclusion clearly does not merit dismissal of his appeal.

in a suit brought by the party so damaged." In the City's Motion for Judgment Notwithstanding the Verdict or for New Trial, the City argued, among other things, that the term "wrongful" is vague and should have been defined for purposes of the verdict director referencing "wrongfully demolished."

As noted earlier, there are no Missouri Approved Instructions for § 67.450 actions. There is likewise no case law interpreting or applying the statute. Section 67.450 does not define the term "wrongfully" nor is it defined in any of the related statutory scheme. In considering statutory language, "we give an undefined word used in a statute its plain and ordinary meaning." *Motton v. Outsource Intern.*, 77 S.W.3d 669, 673 (Mo.App. E.D.2002). A word's plain and ordinary meaning is supplied by the dictionary. *Id.*

> The word "wrong" has been defined as "incorrectly;" "mistaken;" and "unsatisfactory." *Webster's Dictionary of the English Language, Unabridged*, 2112 (Encyclopedia Ed.1977). The word "wrongful" is defined as "full of wrong, unjust, unfair, injurious," *Id.* See also *Black's Law Dictionary*, 1446 (5th Ed.1979), defining "wrongful" as "injurious, heedless, unjust, reckless, unfair. [An infringement] of some right." A "wrongful act" is defined as "any act which in the ordinary course will infringe on the rights of another to his damage, … [a term] occasionally equated to the term 'negligent,' but generally has been considered [a] more comprehensive term, including … reckless and all other acts which in ordinary course will infringe on the rights of another to his damage." *Black's* at 1446. Finally, "wrongfully" is defined as "[i]n a wrong manner; unjustly; in a manner contrary to the moral law, or to justice." *Id.* See also *Webster's* at 2112.

*Battis v. Hofmann*, 832 S.W.2d 937, 939 (Mo.App. W.D.1992). "'Wrongfully' is not a term of art." *Id.* at 940. Indeed, the Missouri Supreme Court has stated that it "cannot conceive how any jury could be mislead because the word, 'wrongful,' was not defined…." *Sandler v. Schmidt*, 263 S.W.2d 35, 38 (Mo.1953) (overruled on other grounds in *Thomas v. Siddiqui*, 869 S.W.2d 740 (Mo.1994)). Accordingly, it is unnecessary to define "wrongfully" in the jury instructions in an action brought pursuant to § 67.450.

Undoubtedly because of the absence of case law and MAIs, the trial court and counsel for both parties struggled to understand how the verdict director should be drafted in order to properly instruct the jury. Indeed, at the hearing on the post-trial motions, the trial court stated: "I don't think the instruction proffered by the City is correct. I am not sure the instruction—verdict director proffered by the plaintiff is correct, but I cannot figure out what the correct instruction would have been." We have found that the verdict director given, requiring only that the jury find that "defendant wrongfully demolished the building owned by plaintiff" and plaintiff was damaged as a direct result, was a roving commission and insufficient. The verdict director failed to identify what acts or omissions on the part of the City rendered the demolition wrongful.

In crafting a verdict director on retrial, counsel and the trial court should be mindful that Rule 70.02(b), as noted earlier, requires that the instruction given must "'be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.'" *In re Ginnery*, 295 S.W.3d at 873. Likewise, instructions must conform to the substantive law. *State v. Car-*

*son,* 941 S.W.2d 518, 520 (Mo. banc 1997). Therefore, § 67.450 establishes the elements on which the jury is instructed. In the circumstances of this case, the proper verdict director must require the jury to find that (a) plaintiff owned a building,[4] (b) the City demolished it, (c) that the City's demolition of the structure was wrongful in one or more specified ways,[5] and (d) plaintiff was damaged as a direct result thereof. In its simplest context, the word "wrongful" or "wrongfully" "only requires the result to be incorrect, regardless of whether the wrongdoer's conduct was mistaken, careless, negligent, reckless or intentional." *Battis,* 832 S.W.2d at 940. Thus, the submission of the way or ways in which the demolition was wrongful will differ from case to case. Whatever the submission(s), each must be supported by sufficient evidence.[6]

■■■ In his second point, McNeill claims that the City failed to demonstrate sufficient prejudice resulting from the submission of the verdict director to warrant a new trial. However, "[a]n instruction is considered prejudicial where [, as here,] it submits a legal question in an abstract way giving the jury a roving commission to return a verdict without being limited to any issues of fact or law developed in the case." *Thompson v. Brown & Williamson Tobacco Corp.,* 207 S.W.3d 76, 120 (Mo. App. W.D.2006) (internal quotation omitted). Point denied.

4. Section 67.450 does not require ownership of the building or structure in order to recover for wrongful demolition and, therefore, does not preclude damages and recovery by non-owners, e.g., tenants, lien holders, others having an interest subject to damage by the demolition.

5. Not unlike conduct or omission submissions in, for instance, motor vehicle instructions. *See, e.g.,* MAI 17.01 and 17.02.

The trial court's grant of a new trial is affirmed.

All concur.

6. In that regard, the only issue raised on appeal in this case is the correctness of the trial court's decision to grant the City a new trial. The City did not appeal the denial of its Motion for JNOV, and no issue is raised concerning the submissibility of McNeill's case.